OPINION
The defendant-appellant, Raymond E. McDuffie ("McDuffie"), brings this appeal from a judgment of conviction of the Marion County Court of Common Pleas, Criminal Division. For the following reasons we affirm the judgment of the trial court.
The pertinent facts and procedural history of the case are as follows. On April 18, 2000, McDuffie and co-defendant Ronald Requez Myles ("Myles") allegedly robbed Mr. Don Yant with a pellet gun. For twenty years, every Tuesday and Wednesday night, Mr. Yant picked up money from the bingo game at Marion Catholic High School and made the night deposit at nearby Fahey Bank. On the night of April 18, 2000, Mr. Yant was confronted by two black males, at least one of whom carried a pellet gun. The person with the gun shot Mr. Yant between the eyes and demanded his money. The assailant again shot Mr. Yant, this time in the left cheek, and demanded his money. The robbers took the proceeds from the bingo game and fled. Mr. Yant drove back to the high school and had the police called. The police received the call at 10:40 P.M.
Fifteen minutes prior to the robbery, Chris Danals called 911 to report a suspicious vehicle parked outside Mauk's Chiropractic Clinic. Mr. Danals, who lived next door to the clinic, described the vehicle and provided a license plate number. The vehicle was determined to belong to Myles. Mr. Danals reported that the vehicle contained three black males and was backed into a parking space facing the high school. Whether there were two or three black males in the vehicle remains in dispute. Mr. Danals observed the vehicle leave the clinic's parking lot at approximately the same time the victim left the high school for the bank. Further witness testimony traced the path of the vehicle as it then proceeded three blocks away to Fahey Bank where the robbery took place.
By 3:00 A.M. the following morning, McDuffie and Myles were located by the Marion Police Department along with Myles' vehicle. McDuffie and Myles admitted to being in possession of the vehicle the evening of the robbery, and on first questioning denied being in the clinic parking lot and any involvement in a robbery. At trial, McDuffie and Myles admitted that they were in Myles' vehicle in the clinic's parking lot. McDuffie and Myles further admitted to driving northbound on Forest Lawn Boulevard to Center Street, which would have taken them past the bank where Mr. Yant was robbed. Shortly before the robbery, McDuffie and Myles were seen with a gun by a friend as they were preparing to leave Myle's home in Myle's vehicle.
The Marion County Grand Jury indicted McDuffie on two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree, and R.C. 2911.01(A)(3), a felony of the first degree. A jury trial was held in this matter on September 1, 2000, returning verdicts of guilty on both charges. Appellant was sentenced to an eight year term in prison for each count of aggravated robbery to be served concurrently.
The Appellant now appeals, asserting the following two assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I
Trial counsel's performance fell so far below an objective standard of reasonableness that it constituted ineffective assistance.
Appellant argues that trial counsel was ineffective for failure to file certain pretrial motions and for failure to prepare for particular elements of the trial. The right to counsel is a fundamental right guaranteed by the Sixth Amendment. Argersinger v. Hamlin (1972),407 U.S. 25. The standard of review for a claim of ineffective assistance of counsel is well settled. To successfully present a claim, a party must meet the two-prong test set forth by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668. See, also, State v.Bradley (1989), 42 Ohio St.3d 136. "Reversal of a conviction for ineffective assistance requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." Ohio v. Jones (2000), 90 Ohio St.3d 403, 407, citingStrickland v. Washington (1984), 466 U.S. 668. Accord State v. Bradley
(1989), 42 Ohio St.3d 136. A claim may be dismissed for Appellant's failure to satisfy either prong. Strickland, 466 U.S. 668.
A. Failure to File Pretrial Motions
1. Failure to File a Motion to Suppress
Appellant contends that he was denied effective assistance of counsel when his attorney failed to file a motion to suppress photographic evidence and identification testimony. Appellant maintains that the differences between the suspects' photographs and the comparison photographs tainted the photo lineup. Therefore, trial counsel's failure to file a motion to suppress the lineup evidence may constitute ineffective assistance and warrant reversal. We disagree.
A pre-trial photographic identification will not be set aside unless it resulted from a procedure so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. Simmons v.United States (1968), 390 U.S. 377. The photo lineups were created using two different cameras, a situation which arose because the City of Marion's jail had recently closed and the police detective did not have access to the camera normally used to photograph booked persons. In the photographs, McDuffie and Myles wore street clothes while the other members of the lineup wore jail uniforms. The photographs of the suspects and comparison photographs were photocopied in black and white and placed in the displays.
Before studying the lineup, the victim, a retired police officer, was able to provide a general description of the suspects' sex, race, approximate age, height and build. The victim's trial testimony illustrates that when shown the photo lineup, he was unable to positively identify any of the suspects. The victim pointed to three photographs of individuals with similar features, two being the defendant-appellants, the third a person unrelated to the robbery. This Court cannot classify as "impermissibly suggestive" a lineup with such a result. Furthermore, due process requires that a court "suppress an identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all circumstances." State v. Davis (1996), 76 Ohio St.3d 107, 112. The record indicates the investigating detective took sufficient steps to ensure that the suspects' photographs looked as similar as possible to the comparison photographs.
We fail to conclude that trial counsel was ineffective for failing to pursue a motion to suppress the photographic evidence and related testimony. The trial record gives no reason to believe that the motion would have been successful, nor that the evidence, if excluded, would have changed the result of the trial.
2. Failure to File Motion in Limine
Appellant alleges deficiency in trial counsel's failure to file a pretrial motion in limine to exclude the statements of the police detective who administered the photo lineup. "Although the motion receives widespread use in Ohio courts, `* * * it is frequently misused and misunderstood. * * *'" State v. Grubb, (1986), 28 Ohio St.3d 199,201, quoting Riverside Methodist Hosp. Assn. v. Guthrie (1982),3 Ohio App.3d 308, 310. A motion in limine operates as a precautionary instruction "to avoid error, prejudice, and possibly a mistrial by prohibiting opposing counsel from raising or making reference to an evidentiary issue until the trial court is better able to rule upon its admissibility * * * once the trial has commenced." Id. at 201. "Thus, a motion in limine, if granted, is a tentative interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue." Id.
Appellant asserts that trial counsel could have excluded the detective's statements if he had filed for such an exclusion with a pretrial motion in limine. However, rarely does finality attach when the motion is granted. Id. The motion is subject to reappraisal during the course of the trial. It is counsel's duty to make his own appraisal of the case and to decide when such motions are worth filing. State v.Vires (1970), 25 Ohio App.2d 70 . Due to the precautionary, interlocutory nature of a motion in limine, we are loathe to find ineffective assistance of counsel for failure to file such a motion.
Appellant has not borne his burden of showing that counsel's failure to file certain pretrial motions was so objectively unreasonable so as to have prejudiced the case and undermined confidence in the outcome. Therefore, the first aspect of Appellant's first assignment of error is without merit and is overruled.
B. Failure to Prepare for the Trial
The second aspect of Appellant's first assignment of error charges that counsel failed in a number of respects to prepare for trial.
1. The Classification of a Pellet Gun as a Deadly Weapon
As previously mentioned, Appellant was charged with violating R.C.2911.01(A)(1), aggravated robbery with a deadly weapon. Appellant initially contends that where the state cannot produce the weapon, an attack should have been raised on the indictment. We disagree. The State is not required to produce a weapon to pursue a criminal offense. Statev. Price (1989), 52 Ohio 1App.3d 49.
Appellant further argues that trial counsel was remiss for failing to challenge the classification of a pellet gun as a deadly weapon. This proposition lacks merit. R.C. 2923.11 defines "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." The issue is not whether the pellet gun inflicted death, but whether it was capable of inflicting death. In this light, a toy gun has been deemed a "deadly weapon" because of its possible use as a bludgeon.State v. Hicks (1984), 14 Ohio App.3d 25; State v. Bonner (1997),118 Ohio App.3d 815. Trial counsel's failure to file a motion or to raise an objection to the classification of a pellet gun as a deadly weapon may be attributed to an assessment of the merits and probability of success of the contemplated proceedings. We do not find the lack of a motion or objection to be deficient or to have deprived the defendant of a fair trial.
2. Statement of a Crucial Witness
Appellant claims that trial counsel was deficient for being unprepared for the statement of a crucial witness for the prosecution. Crim.R. 16(B)(1)(g) states the following:
 Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written * * * statement with the defense attorney and prosecuting attorney participating, to determine the existence of inconsistencies, if any between the testimony of such witness and the prior statement.
 If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 Under Crim.R. 16, defense counsel is not entitled to copies of witnesses' written statements prior to trial. In the present case, a witness for the prosecution testified that she saw McDuffie with Myles before the robbery and that McDuffie had a gun concealed under his shirt. Upon completion of direct examination, defense counsel, conforming with Crim.R. 16, asked to review and received the witness' prior statements. Defense counsel reviewed the written statement then proceeded with cross examination. We find that defense counsel's performance during trial does not meet the requirements for ineffective assistance set forth in Strickland, 466 U.S. 668.
3. Notice of Alibi
Appellant correctly alleges that defense counsel violated Crim.R. 12.1 by failing to provide notice of an alibi to the prosecutor seven days in advance of trial. However, under the facts of this case, we cannot conclude that defense counsel's failure to timely file a notice of alibi constitutes ineffective assistance of counsel.
Appellant suggests that defense counsel's failure to comply with Crim.R. 12.1 illustrates his failure to prepare for trial. Strickland
requires Appellant to show that counsel erred so seriously "that counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment."Strickland, 466 U.S. at 687. From the trial record, it appears that defense counsel was aware of Crim.R. 12.1 and his noncompliance was an intended trial tactic. Second, the Appellant must show that counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Because Appellant successfully presented his alibi to the jury, we cannot conclude that defense counsel's failure to conform with Crim.R. 12.1 prejudiced the outcome of the case.
4. Defendants as Witnesses
Appellant's final assertion of defense counsel's failure to prepare involves the decision to have the defendants take the stand. Appellant suggests that the decision was made last minute and without preparing the witnesses, a conclusion not supported by the record. The testimony of each of the defendants was consistent with one another and detailed as to their whereabouts and activities throughout the evening of the robbery. Myles opened the door for cross-examination regarding a prior theft with a statement unresponsive to defense counsel's question. Despite this occurrence, we cannot conclude that defense counsel was at fault for his client's attempt to bolster his own testimony. Furthermore, we cannot infer from the record that Myles' unresponsive answer establishes counsel's alleged failure to prepare.
Appellant herein has not demonstrated that trial counsel's performance fell below an objective standard of reasonableness so that it constituted ineffective assistance.
Accordingly, the second aspect of Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II
The trial court failed to conduct a meaningful inquiry into the existence of a conflict of interest arising from dual representation of appellants.
Appellant asserts in his second assignment of error that the trial court failed to conduct a meaningful inquiry into the existence of a conflict of interest arising from dual representation of defendant-appellants, McDuffie and Myles. In State v. Gillard (1992),64 Ohio St.3d 304, the Ohio State Supreme Court considered the duty imposed upon a trial court faced with an attorney's possible conflict of interest in representation of a person charged with a crime. After reviewing the United States Supreme Court cases Holloway v. Arkansas
(1978), 435 U.S. 475, Cuyler v. Sullivan (1980), 446 U.S. 335, and Woodv. Georgia (1981), 450 U.S. 261, the Court concluded that "the trial court has an affirmative duty to inquire whether a conflict of interest actually exists." Gillard, 64 Ohio St.3d 304, 311.
On June 27, 2000, the State filed a request for a hearing to notify McDuffie and Myles of their right to separate counsel. Pursuant to the prosecution's request, the trial judge explained to defendant-appellants — with Mr. Slagle for the prosecution and Mr. Amengau for the defendant-appellants present — their right to separate counsel as follows:
 The Court: * * * Gentlemen, if it's not already been indicated to you, you do have the right to be represented by separate attorneys. You don't have to be represented by the same attorney. There may be some good reasons for you to be represented by separate attorneys. * * *
 You're obviously both charged with committing the same robbery offense. Additionally, there is an unindicted third participant in these offenses. It could be to the best interest of either one of you two to cooperate with authorities and provide information regarding the other co-defendant or co-defendants, or the unindicted co-conspirator. It would certainly not be in the best interest of the non-cooperating co-defendant to cooperate. It makes it difficult for defense counsel to provide independent, objective advice to an individual defendant, which advice may be contrary to the interests of the other co-defendant.
 So, it may be in the best interest of one of you to do something and cooperate; it may not be in the other guy's interest, and your lawyer may be caught in the middle of that. * * * [I]f at some point * * * you decide you need a separate attorney * * * and you need to have me consider appointing someone for you, I will consider appointing someone for you. * * *
 * * * Is that a satisfactory explanation? Is there anything else you care to mention?
 Mr. Slagle: No, I think the explanation's fine. I guess it would just probably be helpful if the defendants each indicated whether they understood what you advised, whether they needed any further explanation, or whether they had any questions.
 The Court: Mr. McDuffie, do you understand what I'm talking about?
Mr. McDuffie: Yeah.
The Court: Mr. Myles, what about you?
Mr. Myles: Yes, sir.
 We conclude that the trial court, in compliance with Gillard, supra, conducted a meaningful inquiry into the existence of a conflict of interest arising from dual representation of Appellants.
Accordingly, Appellant's second assignment of error is overruled.
Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
WALTERS, P.J., and SHAW, J., concur.