OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Justine Michael, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

The State of Ohio, Appellee, v. Gillard, Appellant.

[Cite as State v. Gillard (1992),    Ohio St.3d    .]

Criminal law -- Trial court knows or reasonably should know of attorney's possible conflict of interest in representation of person charged with a crime -- Court has affirmative duty to inquire whether a conflict of interest actually exists -- Defendant has a right to representation free from conflicts of interest.

Where a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists. The duty to inquire arises not only from the general principles of fundamental fairness, but from the principle that where there is a right to counsel, there is a correlative right to representation free from conflicts of interest.

(No. 90-1613 -- Submitted June 2, 1992 -- Decided August 12, 1992.)

Appeal from the Court of Appeals for Stark County, No. CA-6701.

Appellant, John Grant Gillard, was indicted for the aggravated murders of Denise Maxwell and Leroy Ensign. For each of these two murders, two counts were returned: one charging that the offense was committed with prior calculation and design (R.C. 2903.01[A]), and one charging felony murder (R.C. 2903.01[B]). Each of the four counts of aggravated murder carried two death penalty specifications. Appellant was also indicted (on two separate counts) for the attempted aggravated murder of Ronnie W. Postlethwaite. A seventh count of the indictment charged appellant with aggravated burglary.

Appellant was tried before a jury and was convicted of all charges and specifications alleged in the indictment. For the aggravated murders of Maxwell and Ensign, the trial court, following the jury's recommendation, sentenced appellant to death.

On appeal, the court of appeals reversed the judgment of the trial court and remanded the cause for a new trial concluding that appellant's convictions were not proper.

Therefore, the court of appeals did not independently review appellant's death sentences for appropriateness and proportionality in accordance with R.C. 2929.05(A). The court of appeals did, however, hold against appellant on a number of appellant's assignments of error -- many of which concerned the sentences of death.

Thereafter, the state of Ohio, appellee, appealed to this court. Appellant cross-appealed on two issues relative to the penalty of death. In State v. Gillard (1988), 40 Ohio St.3d 226, 533 N.E.2d 272, we rejected appellant's arguments on cross-appeal, reversed the judgment of the court of appeals (thereby reinstating appellant's convictions and sentences), and remanded the cause to the appellate court to conduct, pursuant to R.C. 2929.05(A), an independent review of the death sentences for appropriateness and proportionality.1 On remand, the court of appeals affirmed appellant's convictions and the sentences of death.

The cause is before this court upon an appeal as of right.

Robert D. Horowitz, Prosecuting Attorney, and Ronald Mark Caldwell, for appellee.

Randall M. Dana, Public Defender, Pamela A. Conger and Cynthia A. Yost, for appellant.

Douglas, J. Given our previous determination in Gillard, supra, our only remaining task in this death penalty case is to review appellant's propositions of law relating to the court of appeals' review of the death sentences for appropriateness and proportionality, and to conduct our own independent review of the appropriateness and proportionality of the death sentences pursuant to R.C. 2929.05(A). However, appellant has raised an additional matter before us which is of paramount importance. Specifically, appellant claims that his trial counsel, Louis H. Martinez, may have labored under a conflict of interest in his representation of appellant at trial. Although appellant has never previously raised this issue, we have decided to address the question because of the possibility that appellant has been denied his most fundamental constitutional rights under the Fifth and Sixth Amendments to the United States Constitution. Where, as here, a possible violation of due process and of the right to counsel exists, we are not only empowered to consider the question, but it is our duty to do so as a court of last resort. The facts giving rise to the controversy are as follows:

I

The crimes in this case were committed in January 1985 at 213 Kennet Court, Canton, Ohio. Appellant and his brother, William M. Gillard, were arrested in connection with the shootings. Both men were represented by Attorney Louis Martinez at a preliminary hearing2 in Canton Municipal Court on January 11, 1985. Following the hearing, appellant was bound over to the Stark County Grand Jury which returned the indictment against him. The municipal court dismissed the complaint against William Gillard for aggravated murder and attempted aggravated murder. However, the court found cause to believe that William did commit a misdemeanor offense by discharging a firearm outside the residence at 213 Kennet Court

just before the killings and the attempted aggravated murder. On Martinez' advice, William pled no contest to the misdemeanor offense.

The case against appellant proceeded to trial where appellant was again represented by Martinez. Meanwhile, the Stark County Grand Jury continued its investigation into William Gillard's involvement in the crimes. During appellant's trial, the state presented evidence implicating William Gillard as a participant in the commission of the crimes. Martinez attempted to preclude and/or discredit evidence of William's involvement in the matter.

During the fifth week of appellant's trial, Martinez called William Gillard to testify as a witness for the defense. At this time the assistant prosecuting attorney, Alicia M. Wyler, informed the trial court (in a discussion in chambers) of a possible conflict of interest facing attorney Martinez:

"Miss Wyler: * * * William Gillard is currently under investigation in the proceedings continuing into the investigation of these crimes * * *. The Grand Jury has heard evidence on this man * * * since February 5th [1985] * * * and there very well may be a criminal indictment on this man. This has been an on-going investigation for gathering additional evidence.

"This man [William Gillard] clearly, in addition to being advised of his Fifth Amendment Right to remain silent, it is my understanding that Mr. Martinez has represented this man up to this point and I think it becomes clear that there could be a conflict at this point. I think that the Court should advise this man of his right to appoint an attorney other than Mr. Martinez who can clearly advise him of the situation and his rights.

"* * *

"I think that we clearly have a conflict of interest here. * * * I feel that we all have a duty to assign him [William] an attorney and have him fully advised on this particular matter.

"Mr. Martinez: I will say to this Court that I have represented Bill Gillard in this matter from the very first day. I do not feel that there is a question of a conflict. I think I am capable of advising him of his rights.

"However, you can appoint him a lawyer if you feel that there is a conflict. * * *

"* * *

"Miss Wyler: I just think that given the seriousness of this matter that we should get another attorney to talk to him [William] about this matter. Obviously, Mr. Martinez can not see the conflict. However, I see there is a conflict here if we do not advise * * * [William] further.

"Mr. Martinez: I don't know what the purpose is in this trial of placing all this evidence against William Gillard. * * * But I think that I am a competent attorney. I don't know, but I was competent enough to represent this man at the preliminary hearing. I have represented them both.

"* * *

"The Court: Well what we're going to do here is to send this Jury home at the present time. I think that the Court

will have William Gillard come in and come before the Court and I will inquire of him as to his indigency and I will inform him of the possible conflict and attempt to solve this question this morning and attempt to appoint someone immediately to speak with him * * *."

Thereafter, the trial court advised William Gillard of his Fifth Amendment right not to testify as a witness in the proceedings against appellant, given the ongoing investigation by the Grand Jury into William's involvement in the crimes. In further addressing William, the trial judge stated:

"* * * [T]he Court finds that there could be a potential conflict of interests with regard to Attorney Martinez representing both you and your brother, John Gillard. Not that Mr. Martinez would not strive very hard to see to it that, uh, or conduct himself in a way which in which he would do so with integrity with regard to this representation of both you and John Gillard, but there may be conflicts in regard to his representing both of you, which would prejudice you, yourself, John Gillard and the State of Ohio, uh, any one or all of those parties, should Mr. Martinez continue as your legal counsel." (Emphasis added.)

Accordingly, the trial court appointed independent counsel to represent William Gillard. However, the trial court did not address appellant with respect to any possible conflict of interest and did not inquire into whether Martinez' representation of William affected, or would affect, Martinez' representation of appellant.

Upon conferring with counsel, William Gillard waived his Fifth Amendment rights and chose to testify as a witness for the defense. On direct examination, Martinez elicited testimony from William that the charges against him had been dismissed at the preliminary hearing while the charges against appellant were not. Further, William denied ever having a gun in his possession on January 1, 1985, and denied any involvement in the shootings. For the most part, William's testimony on direct examination provided an explanation for all evidence implicating him as a participant in the crimes. On cross-examination, over Martinez' objection, the prosecutor impeached William's testimony with William's no contest plea to the misdemeanor offense of discharging a firearm which, for all practical purposes, placed William at the scene of the crime just prior to the murders.

## II

In his first proposition of law, appellant claims that the trial court knew or should have known of a possible conflict of interest posed by Martinez' dual representation of William and appellant, and that, therefore, the trial court had a duty to inquire into the possible conflict to determine whether Martinez' loyalties to appellant were, in fact, divided. According to appellant, the trial court's failure to so inquire mandates reversal of appellant's convictions and sentences. In support of this argument, appellant relies on Holloway v. Arkansas (1978), 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426; Cuyler v. Sullivan (1980), 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333; and Wood v. Georgia (1981), 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220.

In Holloway, supra, one public defender was appointed to

represent three defendants at a single trial. Defense counsel repeatedly requested the trial court to appoint separate counsel for each defendant, claiming that his clients' interests conflicted. The trial court denied these requests and all three defendants were convicted as charged. The Arkansas Supreme Court affirmed the convictions, holding that the record on appeal failed to demonstrate the existence of an actual conflict of interest or prejudice.

In Holloway, supra, the United States Supreme Court concluded that defense counsel's repeated objections to the joint representation, accompanied by his assertions of a risk of conflict of interest, required the state trial court to either appoint separate counsel or ascertain whether the risk of conflict was too remote to warrant the appointment of separate counsel. Id. at 484, 98 S.Ct. at 1178, 55 L.Ed.2d at 434. The court held that the state trial court's failure to inquire into the risk of conflict unconstitutionally endangered the defendants' Sixth Amendment right to counsel and required reversal of the defendants' convictions whether or not an actual conflict of interest existed, and whether or not prejudice could be shown. Id. at 487-491, 98 S.Ct. at 1180-1182, 55 L.Ed.2d at 436-438.

Cuyler v. Sullivan, supra, is another case involving multiple representation. Sullivan, supra, stands for the proposition that the duty imposed in Holloway, supra, for a state trial court to inquire into the possibility of conflicts of interest posed by multiple representation only arises in cases where the trial judge knows or reasonable should know that a possible conflict of interest exists. Id., 446 U.S. at 346-347, 100 S.Ct. at 1717, 64 L.Ed.2d at 345-346. See, also, Wood, supra. Thus, the duty to inquire into the possible conflicts of interest posed by joint representation of codefendants may arise even though no party to the proceeding specifically objects to the multiple representation. In Sullivan, supra, at 347-348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346, the court concluded that the facts of that case did not require the state trial court to conduct an inquiry into the possibility that a conflict of interest existed, stating:

"Nothing in the circumstances of this case indicates that the trial court had a duty to inquire whether there was a conflict of interest. The provision of separate trials for Sullivan and his codefendants significantly reduced the potential for a divergence in their interests. No participant in Sullivan's trial ever objected to the multiple representation. DiBona's opening argument for Sullivan outlined a defense compatible with the view that none of the defendants was connected with the murders. * * * The opening argument also suggested that counsel was not afraid to call witnesses whose testimony might be needed at the trials of Sullivan's codefendants. * * * Finally, as the Court of Appeals noted, counsel's critical decision to rest Sullivan's defense was on its face a reasonable tactical response to the weakness of the circumstantial evidence presented by the prosecutor. 593 F. 2d, at 521, and n. 10. On these facts, we conclude that the Sixth Amendment imposed upon the trial court no affirmative duty to inquire into the propriety of multiple representation."3

In Wood, supra, former employees of an adult movie theater and bookstore were convicted for distributing obscene materials in violation of a Georgia statute. The employees received fines and jail sentences for their activities, but were placed on probation with the condition that they make regular installment payments toward satisfaction of the fines. When the employees failed to make the required payments, the matter proceeded to a probation revocation hearing where the employees offered evidence that they were unable to pay the fines and expected that their former employer would do so. At this hearing, the state raised the issue that the employees' attorney was hired by the former employer and, therefore, a possible conflict of interest existed. The trial court did not inquire into the alleged conflict and ordered revocation of the probations if arrearages were not paid within five days. Unable to make such payments, the employees moved to modify the conditions of their probation. The trial court denied this motion and ordered the employees to serve the remaining portions of their jail sentences. The Georgia Court of Appeals affirmed and the United States Supreme Court granted certiorari to determine whether the imprisonment of the employees solely because of their inability to make the installment payments violated equal protection guarantees.

In Wood, supra, the United States Supreme Court, sua sponte, raised the issue concerning the possibility of a conflict of interest, stating that "[w]here, as here, a possible due process violation is apparent on the particular facts of a case, we are empowered to consider the due process issue." Id., 450 U.S. at 264-265, 101 S.Ct. at 1100, 67 L.Ed.2d at 226. Based upon a review of the record, the court was unable to conclude whether the employees' attorney labored under an actual conflict-of-interest, but the court nevertheless held that "* * * the record does demonstrate that the possibility of a conflict of interest was sufficiently apparent at the time of the [probation] revocation hearing to impose upon the [trial] court the duty to inquire further."4 (Emphasis sic.) Id. at 272, 101 S.Ct. at 1104, 67 L.Ed.2d at 230-231. The court also found that any doubt as to whether the trial court should have been aware of the conflict of interest problem was dispelled by the fact that the state explicitly raised the issue at the probation revocation hearing and requested that the trial court look into it. Id. at 272-273, 101 S.Ct. at 1104, 67 L.Ed.2d at 231. Accordingly, the Wood majority vacated the judgment of the Georgia appellate court and remanded the cause for a determination by the state trial court whether an actual conflict of interest existed. Id. at 273-274, 101 S.Ct. at 1104, 67 L.Ed.2d at 231. The court further ordered that if the state trial court determined, upon remand, that an actual conflict existed (and that there was no valid waiver of the right to independent counsel), the trial court must conduct a new revocation hearing free from conflicts of interest. Id.

A review of Holloway, Sullivan and Wood, supra, clearly demonstrates that where a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of

interest actually exists.  The duty to inquire arises not only from the general principles of fundamental fairness, but from the principle that where there is a right to counsel, there is a correlative right to representation free from conflicts of interest.  See, generally, Wood, supra.  Where a trial court breaches its affirmative duty to inquire, a criminal defendant's rights to counsel and to a fair trial are impermissibly imperiled and prejudice or "adverse effect" will be presumed.  See, e.g., Holloway, Sullivan and Wood, supra.

Although we cannot be sure that an actual conflict of interest existed, there is a clear possibility of conflict of interest on the facts of this case.  We find that the trial court knew (or at least should have known) that a possible conflict of interest existed which could affect Martinez' representation of appellant.  The conflict-of-interest problem was specifically raised by the state in this case.  We are reluctant to accept the limited inquiry conducted by the trial court into whether the possible conflict affected William Gillard.  Here, we are concerned with appellant's constitutional rights.  Additionally, we are not satisfied that appointing independent counsel to represent William Gillard corrected the problem.  The trial court was constitutionally required to conduct an inquiry into the possible conflict of interest to determine whether appellant had received, and would receive, the right to conflict-free counsel guaranteed him by the Sixth Amendment to the United States Constitution.

The argument has been raised herein that our review of the conflict-of-interest issue is limited to the plain error analysis of Crim.R. 52(B).  This may be true but if a conflict of interest affecting appellant actually existed in this case, it would be clearly improper for us to speculate that the outcome of appellant's trial would not have been different had appellant received representation free from conflicts of interest.  We are keenly aware of the overwhelming evidence of appellant's guilt, but it is our job to ensure that even this appellant receive the protections to which he is entitled.

                                III

For the foregoing reasons, we remand the cause to the trial court with instructions to conduct a hearing to determine whether an actual conflict of interest existed in Martinez' representation of appellant.  If, upon remand, the trial court finds that an actual conflict of interest existed, the trial court is hereby ordered to conduct a new trial free from conflicts of interest.  However, if the trial court determines that no actual conflict of interest existed, the trial court is ordered to return this cause to us so that we may complete our statutorily mandated review.

                                    Cause remanded with
                                    instructions.

Moyer, C.J., Sweeney, Wright, H. Brown and Resnick, JJ., concur.

Holmes, J., dissents.

FOOTNOTES:
1    A complete statement of the facts of this case concerning appellant's convictions and death sentences can be found in our reported opinion in Gillard, supra.
2    Appellant's pending motion to supplement the record with

the transcript of the preliminary hearing is granted.

3   Having concluded that the state trial court had no affirmative duty to inquire into the propriety of the multiple representation, the Sullivan, majority proceeded to determine whether Sullivan was entitled to a writ of habeas corpus based upon the mere possibility that a conflict of interest existed. Id. at 348-350, 100 S.Ct. at 1718-1719, 64 L.Ed.2d at 346-347. In this regard, the court stated, "[i]n order to establish a violation of the Sixth Amendment, a defendant who raises no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance * * *" and "[w]e hold that the possibility of conflict is insufficient to impugn a criminal conviction."  Id. at 348 and 350, 100 S.Ct. at 1718 and 1719, 64 L.Ed.2d at 346-347 and 348, respectively. While this language may seemingly support the proposition that appellant John Gillard must establish the existence of an actual conflict of interest in order to obtain some relief herein, it must be remembered that in Sullivan, supra, the court concluded that the state trial judge had no duty to inquire into a possible conflict of interest.  In cases where there is an affirmative duty to inquire into a possible conflict of interest, the United States Supreme Court has not required a showing of actual conflict or prejudice.  See Holloway, Sullivan, and Wood, supra.

4   At this point in its opinion, the court footnoted the following discussion:

"JUSTICE WHITE'S dissent states that we have gone beyond the recent decision in Cuyler v. Sullivan, 446 U.S. 335 (1980).  Yet nothing in that case rules out the raising of a conflict-of-interest problem that is apparent in the record. Moreover, Sullivan mandates a reversal when the trial court has failed to make an inquiry even though it 'knows or reasonable should know that a particular conflict exists.'  Id., at 347 [100 S.Ct. at 1717, 64 L.Ed.2d at 346]."  (Emphasis sic.) Wood, supra, at 272, 101 S.Ct. at 1104, 67 L.Ed.2d at 231, fn. 18.