**THE STATE of Ohio, Appellee,**

**v.**

**INGOL, Appellant.**

[Cite as *State v. Ingol* (1993), 89 Ohio App.3d 45.]

Court of Appeals of Ohio,
Summit County.

No. 16025.

Decided June 23, 1993.

*Philip D. Bogdanoff,* Summit County Assistant Prosecuting Attorney, for appellee.

*Lawrence Smith,* for appellant.

Cook, Presiding Judge.

Demetri Ingol ("Ingol") appeals his conviction of aggravated trafficking in drugs, R.C. 2925.03(A)(7). We affirm.

The case involves two different arrests of Ingol on drug-related charges; both times he was with Eric Cole who was also arrested and charged.

On December 11, 1991, a drug-buy was set up where Ingol and Eric Cole ("Cole") met with an undercover agent for the Drug Enforcement Agency and an informant, who was wearing a wire. Cole asked the agent whether he was still going to make "that purchase." The agent indicated he was and Ingol asked how much he wanted. After telling Ingol that he wanted two ounces, the agent asked Ingol "how much is it?" Ingol said it was $1,800. The informant and the agent followed Cole and Ingol to another location where Ingol switched cars and Cole got into the agent's car. The agent then followed Ingol to his apartment and while Ingol was waiting outside his car, Cole gave the agent two ounces of cocaine and the agent gave Cole $1,800.

Later, in July 1992, Ingol and Cole were arrested and indicted for aggravated trafficking in drugs, R.C. 2925.03(A)(4), based on an incident where they were found in a car with twenty-seven pieces of crack cocaine and $2,000. In a supplemental indictment based on the December 11 incident, described above, Ingol and Cole were charged with another count of aggravated trafficking in drugs, R.C. 2925.03(A)(7). Ingol and Cole were both represented by Donald L. Walker ("Walker"). Cole pled guilty prior to trial. Ingol pled not guilty and the jury found him not guilty of the July 15 aggravated trafficking, but guilty of the December 11 aggravated trafficking.

Ingol appeals, asserting three assignments of error.

### Assignment of Error No. I

"The trial court erred when it failed to protect the appellant's Sixth Amendment right to counsel that was free from conflicts of interest."

█ With this assignment of error, Ingol contends that the trial court had an affirmative duty to investigate the potential conflict of interest in Walker's representation of both Cole and Ingol. When reviewing a claim of conflict of interest, this court must resolve two distinct issues. The first issue is whether the trial court had a duty to investigate the potential conflict of interest. See *State v. Gillard* (1992), 64 Ohio St.3d 304, 595 N.E.2d 878, syllabus. If the answer to that inquiry is affirmative and the trial court did not make such an inquiry, then the case must be remanded to the trial court for its inquiry as to whether an actual conflict of interest existed. *Id.* at 312, 595 N.E.2d at 883. If the answer to that inquiry is negative, then this court must determine whether an actual conflict of interest adversely affected the attorney's performance. *State v. Manross* (1988), 40 Ohio St.3d 180, 532 N.E.2d 735, syllabus, certiorari denied (1989), 490 U.S. 1083, 109 S.Ct. 2106, 104 L.Ed.2d 667.

As to the first level of analysis then, a trial court has an affirmative duty to inquire as to whether a conflict of interest actually exists if the court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime. *Gillard, supra,* at syllabus. In *Gillard,* the Ohio Supreme Court found that the trial court knew of the possible conflict of interest because the problem was specifically raised by the prosecution. *Id.,* 64 Ohio St.3d at 312, 595 N.E.2d at 883. The court remanded the case to the trial court to conduct a hearing to determine whether an actual conflict of interest existed. *Id.* Absent special circumstances, however, trial courts may assume that multiple representation involves no conflict or that the risk of conflict is known and accepted. *Cuyler v. Sullivan* (1980), 446 U.S. 335, 346–347, 100 S.Ct. 1708, 1717–1718, 64 L.Ed.2d 333, 345–346. While the better practice for the trial court is to make a prompt inquiry and advise each defendant of his or her right to effective assistance of counsel, "[u]nless the trial court knows or reasonably should know that a particular conflict exists, the trial court need not initiate an inquiry." *Id.* at 347, 100 S.Ct. at 1717, 64 L.Ed.2d at 346.

In this case, the trial court was not alerted to the possibility of conflict by counsel, as in *Gillard.* Ingol asserts that the trial court should, nevertheless, have known of the conflict of interest because Cole had pled guilty to the crimes with which Ingol was also charged. We do not agree. Ingol relies on the United States Supreme Court's decision of *Wood v. Georgia* (1981), 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220. Unlike the *Wood* case, however, there is nothing in this record to indicate that the trial court knew or should have known of a possibility of a conflict of interest, except that there were co-defendants, one of whom had plead guilty. A trial court is not obliged to make an inquiry as a matter of course when there are co-defendants with the same attorney. *Manross, supra,* 40 Ohio St.3d at 181, 532 N.E.2d at 737. Thus, having found no special circumstances in this case, we find that the trial court did not have an affirmative duty to inquire whether a conflict of interest actually existed.

Having found that the trial court did not have an affirmative duty to inquire into the possibility of a conflict, we next turn to the issue of whether an actual conflict of interest existed. A trial court will be reversed if an appellant shows that an actual conflict of interest adversely affected counsel's representation of the appellant. *Id.* at syllabus. "A lawyer represents conflicting interests when, on behalf of one client, it is his duty to contend *for* that which duty to another client requires him to *oppose.*" (Emphasis added.) *Id.* at 182, 532 N.E.2d at 738.

In this case, the defense presented by Ingol did not conflict with Cole's interest. In fact, Cole admitted his guilt and then testified that he was the one who sold the cocaine on December 11 to the undercover agent and that Ingol did

not have anything to do with the transaction. Ingol also testified that he did not have anything to do with the transaction. Ingol has not specified any circumstances exposing an actual conflict of interest. After having reviewed the record, we find that no actual conflict of interest existed and that Ingol was not denied his Sixth Amendment right to counsel. The first assignment of error is overruled.

## Assignment of Error No. II

"The trial court erred in entering a finding of guilty when the defendant was denied his Sixth Amendment right to a competent counsel."

In *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693, the United States Supreme Court set forth a two-part test for determining when a conviction must be reversed upon a claim of ineffective assistance of counsel:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." See, also, *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768.

A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy. *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. at 2068, 80 L.Ed.2d at 694.

Ingol contends that his trial counsel was ineffective because counsel did not move (1) to sever the counts, (2) to suppress the contraband seized July 15, and (3) to suppress the contraband seized December 11, or (4) to request a continuance to adequately investigate the tape of the December 11 transaction. Ingol, however, does not give any basis as to why any of these motions should have been granted. In fact, the evidence "seized" on December 11 was "seized" through the police buying the cocaine from Ingol and Cole. As to the continuance, Ingol's counsel heard the tape, was not surprised by it and actually introduced the tape as evidence. Further, as to the motion to suppress the contraband seized on July 15, Ingol was acquitted of that aggravated trafficking count, and, thus, this alleged error could not have deprived Ingol of a fair trial.

Ingol has not shown that his counsel was ineffective, and, thus, his second assignment of error is overruled.

Assignment of Error No. III

"The conviction for aggravated trafficking is not supported by sufficient evidence."

It is fundamental that the prosecution must prove every necessary element of the crime charged beyond a reasonable doubt. *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375. After reviewing the evidence in the light most favorable to the prosecution, this court must ask whether any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

R.C. 2925.03(A)(7) states:

"No person shall knowingly do any of the following:

" * * * *

"(7) Sell or offer to sell a controlled substance in an amount equal to or exceeding three times the bulk amount, but in an amount less than one hundred times that amount."

Ingol contends that he did not deliver the cocaine and that he did not participate in Cole's selling of the cocaine to the agent. The "selling" or "offering to sell" element could have been found from the agent's testimony that Ingol asked him how much cocaine he wanted, that Ingol told the agent it would cost $1,800 and that Ingol was present during the entire drug transaction which included switching cars, and traveling to Ingol's apartment to make the sale.

Based on this evidence, a reasonable trier of fact could have found beyond a reasonable doubt that Ingol committed the essential elements of aggravated trafficking in drugs. The third assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN and REECE, JJ., concur.