[Cite as *State v. Williams*, 2020-Ohio-3588.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

    Plaintiff-Appellee,                 :

                               No. 108333

    v.                                  :

MARSHALL WILLIAMS,                          :

    Defendant-Appellant.                :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 2, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-634683-A

---

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Marc D. Bullard, and Frank Romeo Zeleznikar, Assistant Prosecuting Attorneys, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and David M. King, Assistant Public Defender, *for appellant.*

ON RECONSIDERATION[1]

MARY EILEEN KILBANE, J.:

**{¶ 1}** Defendant-appellant, Marshall Williams ("Mr. Williams"), appeals his guilty plea and conviction. For the reasons that follow, we affirm.

## I.    FACTS

**{¶ 2}** On December 7, 2018, a grand jury returned an eight-count indictment against Mr. Williams and his wife, Shawnte Williams ("Ms. Williams"), for an offense dated November 16, 2018. Mr. Williams was 41 years old at the time of the offense; Ms. Williams was a few days short of 41 years old. The couple lived together and have children and grandchildren.

**{¶ 3}** Mr. Williams was charged with the following: trafficking in violation of R.C. 2925.03(A)(2), a first-degree felony (count 1); drug possession in violation of R.C. 2925.11(A), a first-degree felony (count 2); trafficking in violation of R.C. 2925.03(A)(2), a fifth-degree felony (count 3); drug possession in violation of R.C. 2925.11(A), a fourth-degree felony (count 4); drug possession in violation of R.C. 2925.11(A), a fifth-degree felony (count 5); and possessing criminal tools in violation of R.C. 2923.24(A), a fifth-degree felony (count 6). All six counts included forfeiture specifications.

---

[1] The original decision in this appeal, *State v. Williams*, 8th Dist. Cuyahoga No. 108333, 2020-Ohio-1378, released on April 9, 2020, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct. Prac.R. 7.01.

{¶ 4} Ms. Williams was indicted on count 6 and two other charges: permitting drug abuse in violation of R.C. 2925.13(A) and (B), fifth-degree felonies (counts 7 and 8). As with the other counts, counts 7 and 8 included forfeiture specifications.

{¶ 5} On December 27, 2018, Mr. and Ms. Williams initially pled not guilty to the charges. Thereafter, they agreed to a joint plea deal. At the plea hearing on January 23, 2019, Mr. Williams withdrew his not guilty plea and pled guilty to an amended count 1 and the as-indicted count 4. As amended, count 1 included the forfeiture specifications, but the weight of the drug was reduced from "equals or exceeds one hundred grams" to 27-100 grams. As indicted, count 1 carried with it a mandatory 11-year sentence based on the weight of the drugs. As amended, count 1 required a mandatory sentence between 3 to 11 years and a mandatory fine of $10,000, with a discretionary fine up to $20,000. count 4 was a felony-four charge of drug possession in violation of R.C. 2925.11. The state nolled counts 2, 3, 5, and 6 against Mr. Williams.

{¶ 6} Ms. Williams also entered a guilty plea at the same hearing on January 23, 2019, after previously pleading not guilty on December 27, 2018. She pled guilty to possessing criminal tools in violation of R.C. 2923.24(A) (count 6). The state nolled counts 7 and 8.

{¶ 7} The trial court held a group-plea hearing at which five defendants were present, two of which were Mr. and Ms. Williams. The other three defendants

were present for unrelated cases. The trial court instructed the defendants collectively as follows at the plea hearing:

> I'm going to be asking a series of questions. Each defendant must answer in a loud, clear voice. If you do not have a loud, clear voice, you can use the microphone that's in front of you. If I have to ask you to speak up or to speak more clearly, I'm going to take that as a sign of disrespect to this court, which I will consider at a later time.

{¶ 8} The court then instructed the defendants to answer in a particular order and further explained:

> The court reporter has to take this down in an organized fashion, and he can only take one voice at a time. So wait for the person before you to finish their answer. I may ask a follow-up question of that person. Wait till we are done until it goes to you, okay?

{¶ 9} The court instructed Mr. Williams to answer second among the five defendants. Mr. Williams and the other defendants represented that they understood the court's instructions. Later during the plea hearing, the court directed a question to Mr. Williams specifically and he answered. The court then corrected itself and had the defendants answer in the order it originally prescribed:

> COURT: Now, were the forfeitures, pleas also done of your own free will and desire, Mr. Williams?
>
> MR. WILLIAMS: Yes.
>
> COURT: First, Mr. Ogletree?

{¶ 10} Mr. Ogletree was another defendant in an unrelated case at the plea hearing who was to answer first according to the trial court's initial instructions.

{¶ 11} On February 27, 2019, a month after the plea hearing, the trial court sentenced Mr. and Ms. Williams. They each addressed the court at the sentencing

hearing. Ms. Williams apologized to the court. Mr. Williams stated that he accepted responsibility for his actions, but requested leniency after explaining that he had a difficult childhood and that he was only trying to raise money to pay for surgeries Ms. Williams required in addition to other household and family expenses. He also stated: "I really - - I'm really truly glad, you know, this happened because I was looking for a way out. * * * I just want to be right. I just want to make things right."

{¶ 12} In response, the trial court reviewed Mr. Williams's record and estimated that he had made at least 700 drug sales to members of his community, noting that he had been selling drugs since as early as 2000. The court further underscored the gravity of Mr. Williams's actions in the following exchanges:

> COURT: Okay. But you know, you know it's bad enough that you don't give it to your kids.
>
> MR. WILLIAMS: Yes, ma'am.
>
> COURT: That's a monster in my book, you know? You say I didn't know it was so bad. Of course I wouldn't believe that at this stage. But you got 700 sales, and I really doubt there were only two people buying 700 times.
>
> * * *
>
> COURT: Sir, do you think it would be okay if I went out and sold drugs to your kids and your family members so that I could buy my kids whatever they want?
>
> MR. WILLIAMS: No, ma'am, that is not - -
>
> COURT: That is what you did.

{¶ 13} The court sentenced Mr. Williams to nine years on count 1 and eighteen months on count 4 to be served concurrently. The court also imposed the mandatory minimum fine of $10,000 in connection with count 1 and ordered the

forfeiture of two vehicles, two digital scales, eight cell phones, and $14,630. In addition, the court ordered five years of mandatory postrelease control. Ms. Williams was sentenced to five years of probation.

{¶ 14} The same counsel jointly represented Mr. Williams and Ms. Williams at the plea hearing and at the sentencing. This appeal follows.

{¶ 15} Mr. Williams asserts the following four assignments of error:

### Assignment of Error One

Mr. Marshall Williams was denied due process when the trial court imposed a vindictive sentence that was not supported by the record in violation of R.C. 2929.11, 2929.12, the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Article I Section 10 of the Ohio Constitution and Ohio Crim.R. 32.

### Assignment of Error Two

The trial court erred when it did not determine that the defendant understood the nature of the offenses, the effects of the plea, and that he was waiving certain constitutionally guaranteed trial rights by pleading guilty in violation of the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Article I Section 10 of the Ohio Constitution and Ohio Crim.R. 11.

### Assignment of Error Three

The accused was denied due process and his right to counsel in violation of U.S. Constitution Amendments V, VI, and XIV; and Ohio Constitution Art. I, Section 10.

### Assignment of Error Four

Mr. Marshall Williams was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution when his attorney failed to file an indigency affidavit to waive the mandatory fine and when counsel continued to represent codefendants despite a clear conflict.

{¶ 16} Each of appellant's assignments of error are overruled.

## II.    LAW AND ANALYSIS

### A.  The sentence was not vindictive.

{¶ 17} Mr. Williams argues in his first assignment of error that he was denied due process because his sentence was vindictive.  Mr. Williams contends that the trial court imposed a 9-year sentence as punishment for his answering out of turn at the plea hearing a month earlier.  He further contends that the 9-year sentence was vindictive because:  the sentencing range for his crimes was 3 to 11 years; the prosecution did not request a particular sentence; and Mr. Williams argued for leniency, stating that he planned to use the money obtained in connection with his crimes to pay for surgery for Ms. Williams.

{¶ 18} "A sentence that is vindictively imposed on a defendant because he or she exercised a constitutional right is contrary to law." *State v. Williams*, 8th Dist. Cuyahoga No. 108275, 2020-Ohio-269, ¶ 55, citing *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 8.  "When reviewing a sentence for vindictiveness, we begin by presuming that the trial court considered the proper sentencing criteria." *Id.*, citing *Rahab* at ¶ 19.  "We then review the record for evidence of actual vindictiveness." *Id.* "We will reverse the sentence only if we clearly and convincingly find the sentence is contrary to law because it was imposed as a result of actual vindictiveness on the part of the trial court." *Id.*, quoting *Rahab* at ¶ 19.

{¶ 19} Here, the record does not clearly and convincingly demonstrate that the trial court based its sentence on actual vindictiveness.  To the contrary, before

imposing a 9-year sentence instead of the maximum 11, the trial court properly considered Mr. Williams's prior record, the impact of his crimes on the community, his knowledge regarding the perils of drug use, and his expressed remorse. *See* R.C. 2929.11 and 2929.12. *See also Rahab* at ¶ 32.

{¶ 20} Mr. Williams asserts that the trial court's admonition to Mr. Williams and the other defendants to speak loudly, clearly, and one at a time during the plea hearing reveals actual vindictiveness because the court also warned that if anyone failed to speak loudly, clearly, and one at a time, the court would "take that as a sign of disrespect to this court, which I will consider at a later time." The record does not support this theory. The court did not admonish Mr. Williams for answering before the other defendant during the plea hearing and never referenced the incident during sentencing. Based on our review, Mr. Williams simply answered a question after the trial court directly addressed him and the record does not indicate that the trial court vindictively sentenced Mr. Williams for doing so.

{¶ 21} During sentencing, the trial court reviewed Mr. Williams's criminal record. It cited three prior incidents while Mr. Williams was a juvenile and numerous incidents thereafter. The trial court also addressed Mr. Williams's request for leniency based on his apparent intention to use money from drug sales to pay for his wife's surgeries and noted that CareSource Health Insurance, not Mr. Williams, would pay for the surgeries. The court also considered the number of sales Mr. Williams had made, calculating as many as 700, and the harm, including possible deaths, he caused to his customers and the community. Although the trial

court could have imposed an 11-year sentence and $20,000 fine for the amended count 1, it imposed a lesser 9-year sentence and the mandatory minimum $10,000 fine.

{¶ 22} Ms. Williams, who was charged with fewer offenses, received a sentence of five years' probation. That Ms. Williams received a lesser sentence does not demonstrate vindictiveness towards Mr. Williams, but merely reflects Ms. Williams's lesser-involvement in the charged crimes. Whereas Ms. Williams faced three charges and pled guilty to one, Mr. Williams faced six charges and pled guilty to two, one of which carried a mandatory prison sentence and fine. Mr. Williams likely would have faced a significantly longer sentence had he not agreed to the plea deal and instead been found guilty of the six as-indicted counts — including counts 2, 3, 5, and 6 that the state nolled as part of the plea deal — rather than only the amended count 1 and as-indicted count 4.

{¶ 23} Accordingly, the first assignment of error is overruled.

**B.  The trial court complied with Crim.R. 11.**

{¶ 24} In his second assignment of error, Mr. Williams argues that the trial court's procedure at the plea hearing was insufficient to assure that Mr. Williams was making his plea knowingly, intelligently, and voluntarily because the court used a group-plea hearing. We disagree.

{¶ 25} A defendant's plea must be entered knowingly, intelligently, and voluntarily for the plea to be constitutional under the United States and Ohio Constitutions. *State v. Engle*, 74 Ohio St.3d 525, 527, 1996-Ohio-179, 660 N.E.2d

450. "Ohio Crim.R. 11(C) was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review." *State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990). The underlying purpose of Crim.R. 11(C) is to ensure that the trial court conveys certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty or no contest. *State v. Harris*, 8th Dist. Cuyahoga No. 108529, 2020-Ohio-805, ¶ 13, citing *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981).

{¶ 26} We review whether the trial court complied with Crim.R. 11(C) de novo. *Id.* at ¶ 14. In reviewing the record, appellate courts must consider the totality of the circumstances to determine whether the plea hearing complied with Crim.R. 11(C). *Id.*

{¶ 27} Crim.R. 11(C) states:

In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have

compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 28} "Trial courts must strictly comply with the provisions concerning the constitutional rights set forth in Crim.R. 11(C)(2)(c), but only substantial compliance is required for the provisions concerning nonconstitutional rights set forth in Crim.R. 11(C)(2)(a) and (b)." *Harris* at ¶ 16, citing *State v. Griggs*, 103 Ohio St. 3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.*, quoting *State v. Nero*, 56 Ohio St.3d 106, 107, 108, 564 N.E.2d 474 (1990).

{¶ 29} During the plea hearing on January 23, 2019, the trial court obtained pleas from Mr. Williams and four additional defendants in a group-plea setting. The court first positioned the defendants in a specific order and instructed the defendants to answer in that order throughout the proceeding. The court then directed questions to all of the defendants and elicited responses from each defendant individually. There is no prohibition on a trial court conducting a group-plea hearing. *State v. Hawkins*, 8th Dist. Cuyahoga No. 108057, 2019-Ohio-4162, ¶ 19, citing *State v. Strimpel*, 8th Dist. Cuyahoga No. 106129, 2018-Ohio-1628, ¶ 12.

{¶ 30} Based on a review of the record, we find the totality of the circumstances demonstrates that the trial court complied with all aspects of Crim.R. 11 and that Mr. Williams subjectively understood the implications of his guilty pleas and the rights he would waive upon entering guilty pleas.

{¶ 31} Because the record demonstrates that Mr. Williams's plea was knowingly, intelligently, and voluntarily entered, his second assignment of error is overruled.

**C. The trial court had no duty to inquire about the dual representation and the record does not reveal an actual conflict adversely affected counsel's performance.**

{¶ 32} Mr. Williams argues in his third assignment of error that he was denied due process and his right to counsel. He contends that his conviction should be vacated because the trial court failed to ensure that his counsel, who also represented Ms. Williams, explained any potential conflict of interest before allowing the matter to proceed.

{¶ 33} "In reviewing a conflict of interest claim, we must resolve two distinct issues. First, we must determine whether the trial court had a duty to investigate the potential conflict of interest." *Cleveland v. Harris*, 8th Dist. Cuyahoga No. 105545, 2018-Ohio-1522, ¶ 12, citing *State v. Ingol*, 89 Ohio App.3d 45, 48, 623 N.E.2d 598 (9th Dist.1993). Second, "[i]f the duty to inquire did not arise, then we must determine whether an actual conflict occurred that adversely affected counsel's ability to represent the defendant." *Id. See also Cleveland v. Brewer*, 8th Dist. Cuyahoga No. 108365, 2020-Ohio-_ _ _, ¶ 4.

{¶ 34} First, the record does not indicate any special circumstances by which the trial court knew or reasonably should have known that a particular conflict existed of which it had a duty to inquire. "Where a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a

person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists." *State v. Gillard*, 64 Ohio St.3d 304, 311, 1992-Ohio-48, 595 N.E.2d 878. Because the attorney representing multiple defendants is in the best position to determine whether a conflict of interest exists or might develop, it is reasonable for a trial court to assume, in the absence of special circumstances, that there is no conflict or that the defendants knowingly accepted any risk of conflict. *State v. Ermekeil*, 8th Dist. Cuyahoga Nos. 63703 and 63704, 1993 Ohio App. LEXIS 4433, 8 (Sept. 16, 1993), citing *Cuyler v. Sullivan*, 446 U.S. 335, 347, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

{¶ 35} This court has previously considered whether a trial court had a duty to inquire about the dual representation of a husband and wife. In one such case, we found that the trial court did not err in failing to inquire about dual representation where the appellant did not raise any objections to the trial court regarding the dual representation of himself and his common-law wife. *Ermekeil* at 8, 12. In another case, we found that the trial court erred by not explaining the risks of dual representation to husband and wife defendants where the husband-appellant expressed reservations about the dual representation to the trial court. *State v. Haugabrook*, 8th Dist. Cuyahoga No. 103693, 2016-Ohio-5838, ¶ 17.

{¶ 36} Neither Mr. Williams nor Ms. Williams raised any objections or reservations to the dual representation. Instead, they each separately expressed their understanding about their cases and satisfaction with their counsel to the trial court at the plea hearing.

{¶ 37} Moreover, the joint plea deal would not have given the trial court reason to know of a particular conflict because the plea benefitted both Mr. and Ms. Williams. Without the plea deal, Mr. Williams faced a mandatory minimum sentence of 11 years on count 1 and the potential for a longer sentence based on the four counts against him that the plea deal nolled. With the plea deal, the amended count 1 allowed for a discretionary sentence between 3 and 11 years. Mr. Williams ultimately received a lesser sentence than the mandatory minimum sentence he faced without the plea deal.

{¶ 38} The plea deal also nolled two felony-five charges against Ms. Williams so that she only faced a charge for possessing criminal tools (count 6). Facing just the single charge, Ms. Williams received five years' probation. Although a serious sentence, probation will nevertheless allow Ms. Williams to find employment, attend to her health, and return to their family home and grandchildren. As the record does not demonstrate any special circumstances by which the trial court knew or reasonably should have known that a particular conflict existed, the trial court need not have inquired about the dual representation.

{¶ 39} However, "[w]e note that the Sixth Amendment right to effective assistance of counsel secures to a criminal defendant both the right to competent representation and the right to representation that is free from conflicts of interest." *Haugabrook* at ¶ 8, citing *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Accordingly, "the better practice is to make a prompt inquiry

and advise each defendant of his or her right to effective assistance of counsel, including separate representation." *Ermekeil* at 9.

{¶ 40} Second, we do not find that an actual conflict occurred that adversely affected counsel's ability to represent Mr. Williams. "To establish an actual conflict, a defendant must show: (1) the existence of some plausible alternative defense strategy or tactic that might have been pursued and (2) that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *State v. Hale*, 8th Dist. Cuyahoga No. 107646, 2019-Ohio-3276, ¶ 65, citing *State v. Gillard*, 78 Ohio St.3d 548, 553, 1997-Ohio-183, 679 N.E.2d 276.

{¶ 41} Mr. Williams contends that he and Ms. Williams required separate counsel because they faced different charges that would have necessitated different and "potentially conflicted" legal defenses, strategies, and tactics. However, Mr. Williams's plea deal was a package plea deal that benefitted both him and Ms. Williams and the record does not disclose any demonstration of an actual conflict of interest that adversely affected his counsel's performance. *Harris*, 2020-Ohio-805 at ¶ 19 (trial court had no duty to inquire further about conflict of interest where defendant failed to direct appellate court to a specific instance in the record demonstrating an actual conflict).

{¶ 42} Accordingly, appellant's third assignment of error is overruled.

**D. Mr. Williams was not deprived of effective assistance of counsel.**

{¶ 43} In his fourth assignment of error, Mr. Williams argues that counsel was ineffective in two ways. He first contends counsel was ineffective for failing to

file an indigency affidavit to seek waiver of the mandatory fine associated with count 1. Second, Mr. Williams contends counsel was ineffective for jointly representing him and Ms. Williams.

{¶ 44} Our review of counsel's performance is highly deferential. *State v. Korecky*, 8th Dist. Cuyahoga No. 108328, 2020-Ohio-797, ¶ 20, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because we presume licensed attorneys are competent, the party claiming ineffective assistance of counsel bears the burden of proving that counsel was ineffective. *Id.*, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985).

{¶ 45} Mr. Williams first argues that he was denied effective assistance of counsel pursuant to Crim.R. 11 when counsel failed to file an indigency affidavit to seek waiver of the $10,000 mandatory fine associated with count 1. "[T]he failure to file an affidavit of indigency for purposes of waiving a mandatory fine constitutes ineffective assistance of counsel where the record shows a 'reasonable probability' that the trial court would have found the defendant indigent and unable to pay the fine had the affidavit been filed." *State v. Stovall*, 8th Dist. Cuyahoga No. 104787, 2017-Ohio-2661, ¶ 10.

{¶ 46} R.C. 2929.18(B)(1) prescribes the manner in which the court shall proceed in waiving the mandatory fine for an indigent offender:

> If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this

division, the court shall not impose the mandatory fine upon the offender.

{¶ 47} Thus, in order for an offender to avoid the imposition of a fine at the time of sentencing, 1) the defendant must submit an affidavit of indigency to the court prior to sentencing; and 2) the court must make a determination that the offender is, in fact, indigent. *Stovall* at ¶ 8-9. "[B]efore imposing a financial sanction under R.C. 2929.18, the court must also consider the offender's present and future ability to pay the amount of the sanction or fine." *State v. Raimundy-Torres*, 8th Dist. Cuyahoga No. 101490, 2015-Ohio-1450, ¶ 12. "However, there 'are no express factors that must be taken into consideration or findings regarding the offender's ability to pay that must be made on the record.'" *Id.*, quoting *State v. Martin*, 140 Ohio App.3d 326, 338, 2000-Ohio-1942, 747 N.E.2d 318 (4th Dist.).

{¶ 48} In *Stovall*, we found that the record did not demonstrate a reasonable probability that the trial court would have found the defendant indigent for purposes of waiving a mandatory fine of $1,350 where the record showed that the defendant was employed as a plumber and was able to work while out on bond. *Stovall* at ¶ 12. In *Raimundy-Torres*, we affirmed the trial court's imposition of a mandatory fine where the defendant was caught with more than $3,300 in an earlier case and had retained an attorney. *Raimundy-Torres* at ¶ 13. Noting that the defendant also had the "resources available to you with the support of your family and whatever resources you're not reporting here," the court imposed the minimum mandatory fine of $10,000 for a first-degree felony. *Id.* Considering *Stovall* and *Raimundy-Torres*, we do not find that this record shows a "reasonable probability" that the trial

court would have found Mr. Williams indigent and unable to pay the fine had the affidavit been filed.

{¶ 49} In Mr. Williams's sentencing memorandum, counsel represented that he is "self-sustaining," was employed by Lucky Café for the last three years, paid taxes, and provided for his family. Mr. Williams forfeited two vehicles, two digital scales, eight cell phones, and $14,630 in connection with the charges against him. However, looking to the future, the sentencing memorandum predicted that Mr. Williams would be able to "launch a new life if given lenience" due to his strong family and "substantial community support network." At the sentencing hearing, Mr. Williams informed the trial court that although previously unemployed, he had been working a steady job for the last couple months. Further, the trial court made the point that Medicare would cover the expense of Ms. Williams's surgeries, after Mr. Williams claimed to be saving up for the medical expenses. We also note, as we did in *Raimundy-Torres*, that Mr. Williams retained counsel for this case.

{¶ 50} In support of his argument, Mr. Williams notes that the trial court previously found him indigent for purposes of receiving appointed counsel. However, "a determination that a criminal defendant is indigent for the purposes of receiving appointed counsel does not equate to a determination of indigency for purposes of waiving the imposition of a fine." *Stovall* at ¶ 11. *See also State v. Carty*, 2018-Ohio-2739, 116 N.E.3d 862, ¶ 35 (8th Dist.).

{¶ 51} Mr. Williams also directs us to cases from the Sixth, Tenth, and Eleventh Districts in which those courts found that the defendants were denied

effective assistance of counsel for failing to file an indigency affidavit to waive the mandatory fine. We do not find these cases to be persuasive. In *State v. Gilmer*, the Sixth District found that the defendant was cocaine-dependent at the time of sentencing, had a "spotty work history," and was represented by appointed counsel. *State v. Gilmer*, 6th Dist. Ottawa No. OT-01-015, 2002 Ohio App. LEXIS 1971, 6-7 (Apr. 26, 2002). Unlike in *Gilmer*, the record shows that Mr. Williams was consistently employed for at least three years and had retained counsel for his case.

{¶ 52} In *State v. McDowell*, the Eleventh District found a reasonable likelihood that the trial court would have found the defendant indigent where the defendant was unemployed at the time of his arrest. *State v. McDowell*, 11th Dist. Portage No. 2001-P-0149, 2003-Ohio-5352, ¶ 76. Here, in contrast, the record demonstrates that Mr. Williams had been employed prior to his arrest for three years.

{¶ 53} In *State v. Parsley*, the Tenth District found ineffective assistance of counsel for failing to file an indigency affidavit where the defendant had no source of income or employment at the time of the offense and no prior employment. *State v. Parsley*, 10th Dist. Franklin No. 09AP-612, 2010-Ohio-1689, ¶ 66. Here, once again, the record supports that Mr. Williams was employed prior to his arrest and had a "substantial" support system from family and his community.

{¶ 54} In light of the above, the record fails to demonstrate a reasonable probability that the trial court would have found Mr. Williams to be indigent and unable to pay the mandatory fine of $10,000 over time. Accordingly, Mr. Williams

has failed to demonstrate that prejudice resulted from counsel's failure to file an affidavit of indigency. Therefore, counsel's failure to do so was not ineffective.

{¶ 55} Turning to Mr. Williams's second complaint regarding counsel, a defendant who pleads guilty waives the right to claim prejudice by ineffective assistance of counsel, except to the extent that the ineffective assistance of counsel caused the plea to be less than knowing, intelligent, and voluntary. *Korecky* at ¶ 19. After entering a guilty plea, a defendant can only show prejudice by demonstrating a "reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at ¶ 20.

{¶ 56} Mr. Williams does not argue or present any evidence that he would not have pled guilty but for counsel's actions and because the record does not support such a conclusion, we overrule this assignment of error. *See Univ. Hts. v. Zaccaro-Hoffman*, 8th Dist. Cuyahoga No. 108575, 2020-Ohio-113, ¶ 9 (no ineffective assistance of counsel where appellant-defendant failed to demonstrate that but-for counsel's performance, she would not have pled no contest).

{¶ 57} As discussed, the trial court complied with Crim.R. 11. Mr. Williams received a full plea hearing and the record demonstrates he entered a knowing, intelligent, and voluntary guilty plea as part of a package plea deal that also benefitted Ms. Williams. He represented to the trial court that he was not forced to plead guilty when asked if there were any threats or promises made to encourage the entry of a guilty plea. He also represented that he was satisfied with the representation he received from his counsel. At the sentencing hearing, Mr.

Williams reiterated that he takes responsibility for his actions. In exchange for pleading guilty to the amended count 1 and the as-indicted count 4, Mr. Williams avoided a mandatory 11-year sentence and the state nolled counts 2, 3, 5, and 6 against him. The joint plea deal also allowed his wife, who was in very poor health, to plead guilty to only one of the three charges against her for which she received probation with no prison sentence. In sum, the record does not demonstrate a reasonable probability that but for counsel's alleged deficiencies, Mr. Williams would not have pled guilty and would have insisted on going to trial.

{¶ 58} Accordingly, Mr. Williams's fourth assignment of error is overruled.

{¶ 59} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

EILEEN T. GALLAGHER, A.J., and
ANITA LASTER MAYS, J., CONCUR