[Cite as *State v. Morris*, 2022-Ohio-1318.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

    Plaintiff-Appellee,          :

                                 No. 110782

    v.                             :

RICHARD MORRIS,                  :

    Defendant-Appellant.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 21, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-627807-A

---

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Melissa Riley, Assistant Prosecuting Attorney, *for appellee*.

Susan J. Moran, *for appellant*.

SEAN C. GALLAGHER, A.J.:

{¶ 1} Richard Morris appeals from multiple convictions stemming from his pleading guilty and being sentenced to three sexual battery and four felonious assault counts for engaging in sexual intercourse with four victims, one of whom was

a minor, without disclosing his HIV-positive status. For the following reasons, we affirm.

{¶ 2} Morris has not provided a recitation of pertinent facts as required under App.R. 16(A)(6). According to the state, Morris engaged in sexual conduct with four victims, at least two of whom "consented" to the sexual relationship but were uninformed of Morris's having tested positive for HIV. The other two victims were a brother and sister who lived with Morris. Morris was involved in a relationship with the sister but also failed to disclose his HIV status despite engaging in sexual conduct. The brother was a juvenile under his sister's care. During the time period in which he was engaging in sexual conduct with the juvenile, Morris attempted to attain custody of the juvenile, although he was already filling a parental-type role.

{¶ 3} After Morris pleaded guilty to two counts of sexual battery in violation of R.C. 2907.03(A)(5) (third-degree felonies), a single count of felonious assault in violation of R.C. 2903.11(B)(3) (a second-degree felony), a single count of sexual battery in violation of R.C. 2907.03(A)(1) (a third-degree felony), and three counts of felonious assault in violation of R.C. 2903.11(B)(1) (second-degree felonies), the trial court sentenced Morris to an aggregate term of imprisonment of 23 years and designated him as a Tier III sex offender. The court imposed the sentences on the felonious assaults to be consecutively served, but only one of those sentences was the maximum possible of eight years. The remaining three sentences were five-year terms.

{¶ 4} Following his sentencing hearing, Morris filed a pro se motion to withdraw his plea, in which he claimed that his counsel of record refused to file a motion to withdraw the guilty plea the day before the hearing. That motion was denied. According to Morris, his attorney was not prepared for trial and promised Morris that the guilty plea would result in Morris being sentenced to less time than the 10-20 years the state was seeking. The remaining discussion was limited to attacking his attorney's personal and professional character. Nevertheless, it is unclear whether the state was seeking a sentencing range of 10-20 years. At the change-of-plea hearing, the parties did not discuss any agreement with respect to sentencing as part of the plea deal, and at the sentencing hearing, the state requested that the court impose the maximum possible sentence. Tr. 261, 267 (at the same hearing, the state also requested a minimum term of imprisonment of "at least 15 years," but that is still not the 10- to 20-year term Morris claims). In this case, imposing consecutive maximum terms would have resulted in a 45.5-year aggregate term of imprisonment. Morris's counsel, on the other hand, argued for an aggregate term of less than 10 years, again outside of the range that Morris claims to have existed. Tr. 276.

{¶ 5} Before addressing the merits of this delayed appeal, we note that there are two orders discussed in the merit briefing, only one of which was included in the notice of appeal. Morris was sentenced on June 29, 2021, and the court denied the postsentence motion to withdraw his guilty plea on August 5, 2021. Morris filed a delayed appeal seeking to appeal his final conviction on August 26, 2021, but the

only entry referenced therein was the final entry of conviction, and not the subsequent order denying the postsentence motion to withdraw the guilty plea, contrary to App.R. 3(D). Although all interlocutory rulings previous to the final entry of conviction merge for the purposes of appellate review, postconviction decisions are separate. *Compare State v. Harris*, 2d Dist. Clark No. 2020-CA-29, 2021-Ohio-1431, ¶ 7 (court's ruling on an oral motion to withdraw a plea after the announcement of the sentence was an interlocutory order that merged into the subsequent judgment of conviction), *with State v. Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, ¶ 6, fn. 2 (noting the consolidation of two appeals filed by the defendant, one from the final convictions and the other from the denial of a postsentence motion to withdraw his guilty plea), and *State v. McGraw*, 8th Dist. Cuyahoga No. 96606, 2012-Ohio-174, ¶ 21-22 (failure to file a separate appeal from the motion to withdraw a guilty plea that was filed after perfecting the notice of appeal is jurisdictional, and the appellate court lacks authority to consider the postconviction ruling).

{¶ 6} The merit briefing addresses the trial court's resolution of the postconviction motion. Under App.R. 3(D) and Loc.App.R. 3(B)(1), the notice of appeal must include a copy of the judgment or order from which the appeal is filed, but the attachments are not a jurisdictional defect if the appeal is nonetheless timely. *Transamerica Ins. Co. v. Nolan*, 72 Ohio St.3d 320, 322, 649 N.E.2d 1229 (1995) (the only jurisdictional requirement for filing a valid appeal is the timely filing of a notice of appeal; all other defects are subject to discretionary sanctions); *see also*

*Midland Funding L.L.C. v. Hottenroth*, 2014-Ohio-5680, 26 N.E.3d 269, ¶ 4 (8th Dist.) (applying the court's local rules to the same effect). In light of the facts that the state has not preserved the issue for further review, this court has jurisdiction over the underlying case, and the notice of appeal was timely filed from the postconviction motion, we will consider the matter on its merits in the exercise of our discretion under App.R. 3 and Loc.App.R. 3.

{¶ 7} In the first assignment of error, Morris claims that the trial court erred by denying his postsentence motion to withdraw his guilty plea without a hearing because of his claimed denial of the effective assistance of counsel during and before the change-of-plea hearing.

{¶ 8} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1. "Manifest injustice" is defined as a "fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her. It has also been defined as 'a clear or openly unjust act,' which exists only in extraordinary cases." *State v. Cottrell*, 8th Dist. Cuyahoga No. 95053, 2010-Ohio-5254, ¶ 15, citing *State v. Owens*, 8th Dist. Cuyahoga No. 94152, 2010-Ohio-3881. In general, self-serving statements alleging the existence of a constitutional deprivation are insufficient in and of themselves to demonstrate a manifest injustice. *State v. Robinson*, 8th Dist. Cuyahoga No. 110358, 2022-Ohio-

82, ¶ 17; *State v. Kirklin*, 11th Dist. Portage No. 2021-P-0089, 2022-Ohio-435, ¶ 11; *State v. Dowers*, 1st Dist. Hamilton No. C-180565, 2019 Ohio App. LEXIS 4609, 2 (Nov. 6, 2019); *State v. Elko*, 8th Dist. Cuyahoga No. 84602, 2005-Ohio-110, ¶ 11; *State v. Combs*, 100 Ohio App.3d 90, 98, 652 N.E.2d 205 (1st Dist. 1994).

{¶ 9} Appellate review of the denial of a postsentence motion to withdraw a guilty plea occurs under the abuse-of-discretion standard of review. *State v. Straley,* 159 Ohio St.3d 82, 2019-Ohio-5206, 147 N.E.3d 623, ¶ 15, citing *State v. Smith,* 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph two of the syllabus, and *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 32. "A trial court is not required to hold a hearing on every postsentence motion to withdraw a guilty plea"; a hearing is required only "if the facts alleged by the defendant, accepted as true, would require that the defendant be allowed to withdraw the plea." *State v. D-Bey*, 8th Dist. Cuyahoga No. 109000, 2021-Ohio-60, ¶ 57, citing *State v. Norman*, 8th Dist. Cuyahoga No. 105218, 2018-Ohio-2929, ¶ 16, and *State v. Vihtelic*, 8th Dist. Cuyahoga No. 105381, 2017-Ohio-5818, ¶ 11. A court will allow an offender to withdraw his plea only if he can establish that changing the plea is necessary to avoid a manifest injustice. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977); Crim.R. 32.1. The logic behind this guideline is to discourage a defendant from pleading guilty to test the weight of a potential sentence and later withdrawing the plea if the sentence is unexpectedly severe. *State v. Caraballo*, 17 Ohio St.3d 66, 477 N.E.2d 627 (1985), citing *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980).

{¶ 10} In this case, Morris claims that he was deprived of effective assistance of counsel before entering his guilty plea, and that that deprivation caused his plea to be anything but knowingly, voluntarily, and intelligently entered. After reciting the black-letter law regarding the ineffective assistance of counsel standard under *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Morris argues, in its entirety:

> Here, if the facts alleged by Mr. Morris are accepted as true, the facts would require that he be allowed to withdraw his guilty plea. Because the trial court denied his Motion without a hearing, it necessarily abused its discretion. In fact, it can be argued that the court did not exercise any discretion at all because the court did not hold a hearing to evaluate the allegations made by Mr. Morris. Because Mr. Morris was not provided the opportunity to present evidence of his claims for the court's consideration, the court abused its discretion.
>
> In his Motion, Mr. Morris argued that counsel should not have encouraged him to enter into a plea before sharing all the discovery with him and before gathering all relevant evidence which could have been helpful to his defense. (See Defendant's Motion to Withdraw Guilty Plea). Further, the trial court should have granted a hearing on this Motion to determine if in fact counsel fell below the objective standard of reasonableness. If Mr. Morris's allegations were true, and counsel did fail to share discovery, and did fail to obtain exculpatory evidence, then his conduct would have fallen below an objective standard of reasonable representation which necessarily would have implicated the knowing, intelligent and voluntary nature of his plea. The trial court's decision not to hold a hearing based on the allegation contained in Mr. Morris's Motion was an abuse of discretion.

In resolving Morris's last attempt to have his appointed counsel removed for alleged discovery issues during the three years of pretrial proceedings, and after he submitted several pro se motions that were voluntarily withdrawn upon discussing the issue with the trial court on the record, the trial court repeatedly remarked that

Morris's attorney undertook extensive discovery review. Tr. 189-198. Morris's conclusory statements to the contrary that lack any analysis or discussion pertaining to the trial court's hearing, consideration, and conclusion on the discovery issue are not sufficient to warrant further discussion. App.R. 16(A)(7).

{¶ 11} Morris also claims that his trial counsel rendered ineffective assistance because Morris believed he would receive a shorter sentence "based on communications he had with his counsel." According to Morris, his trial counsel "promised" that the sentencing resulting from a guilty plea would be between 10-20 years, directly contradicting his statement to the contrary at the change-of-plea hearing in which Morris unequivocally averred that no one "promised [him] anything or threatened [him] in any way in order to get [him] to" plead guilty. Tr. 244. The aggregate term of imprisonment in this case was 23 years, the cumulative total of a single maximum term coupled with three mid-range sentences on the second-degree felonious assault counts that all were consecutively imposed. The sole question is whether that three-year aggregate difference amounts to prejudice; in other words, whether Morris has demonstrated that but for the difference between the trial counsel's "promise" of 20 years and the 23-year aggregate term of imprisonment actually imposed, Morris would have elected to proceed to trial. *State v. Kirkland*, 160 Ohio St.3d 389, 2020-Ohio-4079, 157 N.E.3d 716, ¶ 78, citing *Strickland* at 687-688, 694, and *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. Morris presents

the divided panel decision in *State v. Davner*, 2017-Ohio-8862, 100 N.E.3d 1247, ¶ 1 (8th Dist.), as being directly on point and the sole support of his claim.

{¶ 12} In *Davner*, the defendant appeared for trial on charges of rape, but his counsel of record indicated on the record that he was unprepared to proceed because he assumed that the defendant would accept a plea offer first presented on the morning of trial. *Id.* at ¶ 15. Davner's attorney was paid $20,000 for the pretrial proceedings and was to receive $1,000 a day should the matter proceed to trial. *Id.* at ¶ 6. The rape charges were based on DNA evidence after Davner initially claimed he did not have sexual contact with the victim. After the DNA evidence was disclosed, Davner claimed the sexual conduct was consensual. During the pretrial proceedings, Davner's attorney "never responded to the state's discovery request, never filed any motions, never interviewed any witnesses and never hired an investigator." *Id.* at ¶ 8. Davner claimed "that he repeatedly told [his attorney] that he was innocent and that he wanted to go to trial and did not want to plea." *Id.* at ¶ 7. On the morning of the scheduled trial date, the state tendered its first plea offer. *Id.* at ¶ 15. There was a limited time frame to accept that offer because the trial was set to proceed within hours. *Id.*

{¶ 13} The *Davner* majority concluded after considering the unique facts and totality of the circumstances in this case, including the limited time frame in which Davner was given to consider the state's plea offers; the incomplete information Davner received from counsel regarding judicial release; Davner's demonstrated lack of a full and complete understanding, prior to the plea hearing,

of the offenses to which he would be pleading guilty and the consequences of his guilty pleas; the limited information Davner received regarding the nature of the offenses and the effect of his guilty pleas at the plea hearing; counsel's admission that he was not prepared to try the case if Davner rejected the state's plea offers; and Davner's testimony that, but for this confluence of events, he would not have entered his guilty pleas, that it was necessary to withdraw the defendant's plea to avoid a manifest miscarriage of justice. *Id.* at ¶ 59.

{¶ 14} The outcome of *Davner* is fact-dependent and not applicable to the limited arguments advanced in this case. As the trial court expressly concluded in this case, Morris's attorney engaged in extensive discovery throughout the three-year progression of the case, and nothing in the record indicates that Morris had a limited time to consider the plea agreement or that his trial counsel was unprepared for trial.

{¶ 15} Morris next claims that a conflict of interest arose between his trial counsel and him based on Morris's attempt to force his attorney to withdraw from the case. Morris filed at least two motions to disqualify his attorney of record, which Morris voluntarily withdrew after having a discussion with the trial court. Tr. 149; 187. He also filed a grievance with the Ohio Supreme Court in an attempt to create a conflict of interest requiring new counsel to be appointed a month before trial, at which time Morris's counsel stated that his withdrawal at that point would be prudent unless he was going to be the trial attorney or the matter was further delayed should new counsel be appointed. The court denied Morris's request,

essentially reasoning that his attorney represented him for three years and raising the issue a month before trial was dilatory more than substantive.

{¶ 16} After reciting the black-letter law on conflicts of interest between criminal defendants and their appointed attorneys, and detailing the procedural history of Morris's voluntarily withdrawn pro se motions filed in the underlying proceedings, Morris claims, in its entirety, that

> [h]ere the trial court did not conduct a meaningful examination of Mr. Morris's concerns, nor did the court consider how these concerns may have affected his right to counsel. It is undeniable that Mr. Morris and his Counsel had a conflict of interest after his filing a Grievance against. [sic] Further, it appears from Defense Counsel's Motion that he agreed that he should have been removed as Counsel. The trial court failed to consider this issue and abused its discretion when failing to remove trial counsel as a result.

The record contradicts Morris's claim. The trial court discussed and considered the issue extensively in the pretrial proceedings and issued a judgment entry memorializing the reason behind the decision. Tr. 189-198.

{¶ 17} The short, conclusory paragraph of analysis Morris provided in support of the assigned error is insufficient to warrant any detailed review. App.R. 16(A)(7). Contrary to Morris's statement that the trial court failed to "meaningfully consider" his argument, the trial court considered the matter on the record and explained the reason for its decision. Tr. 189-198. In order to determine that the trial court abused its discretion in denying Morris's repeated attempts to delay proceedings through seeking new appointed counsel because he harbored discontent with the representation, this court would have to supplement the

arguments provided with our own analysis. This is not our role. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part).

{¶ 18} Nonetheless, in support of that claim, Morris also cites *State v. Smith*, 5th Dist. Richland Nos. 94-CA-62 and 94-CA-64, 1995 Ohio App. LEXIS 4235, 5 (Aug. 28, 1995), in which the panel concluded that the trial court erred in failing to conduct a hearing on whether a conflict existed between the defense attorney and their client. *Id.* In a terse decision, the Fifth District panel provided in total:

> In his first assignment of error, appellant claims the trial court erred in denying counsel's request to withdraw at the revocation hearing. Appellant's counsel stated that a conflict of interest existed because appellant filed a grievance against him with the local bar association. Pursuant to the case of *State v. Gillard* (1992), 64 Ohio St.3d 304, 595 N.E.2d 878, we find appellant's first assignment of error well-taken.
>
> The *Gillard* case imposes an affirmative duty upon the trial court to inquire as to whether a conflict of interest actually exists. *Id.* at syllabus. Where there is a right to counsel, there is also a correlative right to representation free from conflicts of interest. Id.
>
> In the case sub judice, the trial court did not conduct a hearing to determine whether a conflict of interest existed between appellant and his trial counsel. The trial court noted in overruling counsel's request to withdraw that counsel was being paid by the court to represent appellant, was an officer of the court, and should therefore be able to discharge his duties. Tr. of Probation Revocation Hearing, July 18, 1994, p. 29.
>
> The trial court had an affirmative duty to further explore the possibility of a conflict of interest between appellant and his appointed trial counsel as a result of the grievance appellant filed with the local bar association. Appellant's first assignment of error is sustained.

*Id.* at 5-6. Even if we could find that summary conclusion persuasive, in this case, the trial court conducted a hearing by considering the matter on the record with all parties present. *Smith* is factually distinct. The first assignment of error is overruled.

{¶ 19} In the final assignment of error, Morris claims that his consecutive sentences are not supported by the record. Morris is HIV positive, but during his sexual encounters, he failed to disclose that fact and had sexual intercourse with a minor in violation of Ohio law. According to Morris, he did not actually infect any of the victims and, therefore, his consecutive sentences are disproportionate to his crimes.

{¶ 20} We need not dwell on this argument. Morris was convicted of felonious assault under R.C. 2903.11(B)(1) and (3): "no person with knowledge that the person has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome, shall knowingly" engage in sexual conduct with another without disclosing that knowledge, or engaging in sexual conduct with a minor. He also was convicted of sexual battery under R.C. 2907.03(A)(1) and (5): "no person shall engage in sexual conduct with another * * * when" the offender knowingly coerces or overcomes the will of the victim, or is the victim's "natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis" of the victim. In short, Morris's argument that none of the victims became infected with HIV and, therefore, the consecutive-sentencing findings are not clearly and

convincingly supported by the record, misses the point — his criminal conduct was not dependent on that fact.

{¶ 21} Felony sentences are reviewed under the standard provided in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 16. A reviewing court may overturn the imposition of consecutive sentences only if it clearly and convincingly finds that either (1) "the record does not support the sentencing court's findings under * * * [R.C. 2929.14(C)(4)]," or (2) "the sentence is otherwise contrary to law." R.C. 2953.08. Before a trial court may impose consecutive sentences, the court must make specific findings mandated by R.C. 2929.14(C)(4) and then incorporate those findings in the sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. The trial court is not required to give a rote recitation of the statutory language. *Id.* "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29. Appellate review of the underlying findings is narrower. In order to reverse the imposition of consecutive sentences, the defendant must clearly and convincingly demonstrate that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4). *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 28.

{¶ 22} In essence, Morris is asking for a de novo review of the imposition of consecutive sentences without deference to the trial court's findings and the totality of the record. His sole focus is on an irrelevant fact, none of the victims were

infected, to the exclusion of the totality of the sentencing considerations. According to the trial court, the victims suffered serious physical and psychological harm, with the victims being unable to present themselves in the courtroom, instead having family speak on their behalf. One of the victims, a minor, was under Morris's care, and Morris took steps to become the juvenile victim's guardian, compounding the seriousness of Morris's conduct. Morris's claim, that the victims were not harmed by actually contracting HIV, rings hollow and fails to address the totality of the sentencing considerations in this particular case. App.R. 16(A)(7). In light of the limited arguments presented, we are unable to clearly and convincingly find that the consecutive sentences are not supported by the record. The final assignment of error is overruled.

{¶ 23} Morris's convictions are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

FRANK DANIEL CELEBREZZE, III, J., and
MICHELLE J. SHEEHAN, J., CONCUR