[Cite as *Solon v. Depew*, 2023-Ohio-304.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF SOLON,                           :

    Plaintiff-Appellee,            :

                                                  No. 111463

    v.                             :

MICHAEL A. DEPEW,                        :

    Defendant-Appellant.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 2, 2023

---

Criminal Appeal from the Bedford Municipal Court
Case No. 21-CRB-01414 and 21-CRB-01416

---

### *Appearances:*

Lon D. Stolarsky, City of Solon Prosecutor, *for appellee.*

Mary Elaine Hall, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Michael Depew, appeals from the municipal court's judgments finding him guilty of disorderly conduct and aggravated menacing. Finding no merit to the appeal, we affirm.

## I.  Background

{¶ 2} Upon the complaint of Depew's next-door neighbors, the city of Solon charged Depew with one count of disorderly conduct in violation of R.C. 2917.11(A)(2) after Depew approached his neighbors' minor child while yelling profanities and abusive language at him, and two counts of aggravated menacing in violation of R.C. 2903.21(A) because after Depew returned home from his police booking on the disorderly conduct charge, he yelled threats to his neighbors, including "I'll f---ing kill you," "You're f---ing dead."

{¶ 3} The charges were filed on September 23, 2021, in two separate cases: Bedford M.C. No. 21-CRB-01414 ("Case No. 01414") for the disorderly conduct charge and Bedford M.C. No. 21-CRB-01416 ("Case No. 01416") for the aggravated menacing charges.  A video zoom arraignment was scheduled for the same day. Upon the filing of a motion for a criminal protection order ("CPO"), the assigned judge conducted a hearing on September 23, and conditioned bail upon Depew's compliance with the conditions of the CPO, including that Depew not return to his home because the alleged victims lived next door to him.

{¶ 4} During the CPO hearing, Depew informed the judge that he had hired attorney Harvey Bruner to represent him.  Later that day, Bruner filed a notice of appearance in both cases.  Having not attended the CPO hearing, Bruner filed a request for a status hearing, which the court granted and set for September 27, 2021. At the hearing on September 27, the judge ruled that if the monitoring device to be placed on Depew showed there had been no alcohol consumption over a two-week

period, Depew would be allowed to return home. Accordingly, the judge set the issue for a further hearing on October 12, 2021.

{¶ 5} At the October 12 hearing, the judge noted that the initial monitoring report indicated no alcohol use. The judge then stated that upon his receipt of an updated report that was to be submitted to him that afternoon, he would modify the CPO to allow Depew to return home if the updated report indicated no alcohol use.

{¶ 6} Although Depew was to enter a plea to the charges at the September 23 hearing, the issue was apparently overlooked due to the issues related to the CPO. When the prosecutor informed the court at the October 12 hearing that Depew had not yet entered a plea, the trial judge allowed him to enter a not guilty plea. The judge then scheduled the cases for a pretrial conference on November 8, 2021, which was later rescheduled to December 13, 2021.

{¶ 7} On November 9, 2021, the city filed a motion to revoke Depew's bond because he had violated the terms of the CPO by shouting obscenities at his neighbors when he returned home. The court scheduled a hearing on the city's motion for December 8, 2021.

{¶ 8} On November 19, 2021, the trial court received notice that Bruner, who had been under investigation for multiple instances of professional misconduct (none of which involved Depew), had been suspended by the Ohio Supreme Court from the practice of law for two years. On December 7, 2021, attorney Bruce Rutsky entered a notice of appearance for Depew.

{¶ 9} Rutsky appeared at the December 8, 2021 bond revocation hearing at which, in the assigned judge's absence, the acting judge presided. Because Depew was hospitalized and unavailable for the hearing, the acting judge ordered that the revocation hearing be rescheduled within 24 hours of Rutsky informing the court that Depew was available and the December 13, 2021 pretrial be rescheduled to January 5, 2022.

{¶ 10} On December 15, 2021, the assigned judge conducted the revocation hearing at which the parties agreed that Depew would remain on bond but not be allowed in his home except under limited circumstances approved by the court. The judge also rescheduled the January 5, 2022 pretrial conference to January 10, 2022; it was later rescheduled to February 17, 2022. A bench trial in both cases commenced on March 30, 2022, before the acting judge.

{¶ 11} Immediately prior to trial, Depew informed the court that he wished to plead no contest to the disorderly conduct charge in Case No. 01414 and stipulate to a finding of guilt. The judge conducted the plea hearing and after questioning Depew in accordance with Crim.R. 11, accepted the plea and found him guilty of disorderly conduct. The judge then sentenced Depew to 30 days in jail, suspended, and fined him $250. The judge reserved ruling on any probation conditions until after trial on the aggravated menacing counts.

{¶ 12} The court then proceeded with trial on the aggravated menacing counts in Case No. 01416. During Depew's opening statement, the judge learned for

the first time that one of the alleged victims was A.B.  The judge then advised the parties that he did not know A.B. but

> I did know his uncle many years ago and I talked to him about two years ago when his father — excuse me — when his son, [J.B.], died in a spring break accident.  Or was it an automobile accident?  One of the two.  I can't remember.  I just want to let everyone know that's the connection I could potentially have here.  And I don't see a need to recuse myself because of that.

(Tr. 7-8.)

{¶ 13} The transcript reflects that the response of Depew's counsel to the judge's statement was inaudible but the judge then added:

> None whatsoever.  And for full disclosure, I believe, now that I'm thinking about it, if I'm right, I believe Mr. Depew's wife knows my cousin, second cousin, [S.M.], I believe.  Just for full disclosure, which does not affect me one way — which will not affect my decision one way or the other.

(Tr. 8.)  Depew's counsel then stated, "Thank you for letting us know all that, your Honor." *Id.*

{¶ 14} Upon the completion of trial, the judge found Depew guilty of both counts of aggravated menacing.  The judge sentenced him to 180 days in jail on each count, to be served consecutively, but suspended the jail sentences subject to 18 months of supervised probation.  The court did not impose any probation conditions on the 30-day suspended jail sentence for disorderly conduct in Case No. 01414.

{¶ 15} This appeal followed.

## II. Law and Analysis

### A. Ineffective Assistance of Counsel, Part One

{¶ 16} In his first assignment of error, Depew contends that attorney Bruner's failure to tell him that he was under investigation by the Ohio Supreme Court denied him his right to effective assistance of counsel as guaranteed by the Sixth Amendment because "Bruner's self-interest created a conflict of interest during his representation of Depew" that "could not but affect his independent legal judgment and professional advice to [his client]." (Appellant's reply brief, p. 1).

{¶ 17} It is well-settled that the Sixth Amendment guarantee of effective assistance of counsel is comprised of two distinct rights: the right to reasonably competent counsel and the right to counsel's undivided loyalty. *State v. Foster*, 10th Dist. Franklin No. 90AP-05, 1990 Ohio App. LEXIS 4911, 9 (Nov. 6, 1990). "Thus, counsel has a duty to perform competently in representing his client and also to avoid conflicts of interest." *Id.*; *see also State v. Caulley*, 10th Dist. Franklin No. 12AP-100, 2012-Ohio-2649, ¶ 21 ("The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel and, in doing so, secures him the assistance of counsel free from conflicts of interest.").

{¶ 18} The Supreme Court of the United States has described a conflict of interest as a "struggle to serve two masters." *Cuyler v. Sullivan*, 446 U.S. 335, 349, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *State ex rel. Ogle v. Hocking Cty. Common Pleas Court*, 167 Ohio St.3d 181, 2021-Ohio-4453, 190 N.E.3d 594, ¶ 23. The possibility of a conflict of interest exists when counsel has reason to further or serve

interests that are different from those of his client. *Ogle* at *id*. An actual conflict of interest exists when counsel is actively representing, furthering, or serving interests that are different from those of his client. *Id*.

{¶ 19} To satisfy a claim of ineffective assistance of counsel based on a conflict of interest, a criminal defendant must demonstrate that an actual conflict of interest adversely affected trial counsel's performance. *Caulley* at ¶ 22, citing *State v. Alexander*, 10th Dist. Franklin Nos. 05AP-192 and 05AP-245, 2006-Ohio-1298, ¶ 20, citing *State v. Keith*, 79 Ohio St.3d 514, 535, 684 N.E.2d 47 (1997), citing *Cuyler* at 348.

{¶ 20} "Although most conflict of interest cases involve an attorney's representation of multiple clients, conflicts of interest may arise in other circumstances, such as when counsel's personal interests conflict with those of the client." *Caulley,* 10th Dist. Franklin No. 12AP-100, 2012-Ohio-2649, at *id*.; *see, e.g., Caulley* at ¶ 23 (a conflict of interest arose when defendant's counsel had an affair with his client's then-wife during his client's murder trial); *State v. Bryant*, 6th Dist. Lucas No. L-84-249, 1985 Ohio App. LEXIS 8861 (Oct. 18, 1985) (counsel's potential criminal liability for conduct involving his own client was a conflict of interest); *State v. Foster*, 10th Dist. Franklin No. 90-AP-05, 1990 Ohio App. LEXIS 4911, 10 (Nov. 6, 1990) (""[A] conflict of interest is not necessarily limited to those factual situations where one attorney simultaneously represents more than one defendant. Rather, the critical inquiry is whether trial counsel actively represented conflicting interests.").

{¶ 21} The usual test for ineffective assistance of counsel is whether the defendant has demonstrated both that counsel's performance fell below an objective standard of reasonable performance and that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceedings. *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, where a defendant shows that an actual conflict of interest by counsel affected the adequacy of the defendant's representation, he need not demonstrate prejudice to show that he was denied his due process right to effective assistance of counsel. *Cuyler*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333, at 349-350; *State v. Cranford*, 2d Dist. Montgomery No. 23055, 2011-Ohio-384, ¶ 61. "Rather, prejudice is presumed if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Cranford* at *id*.

{¶ 22} Where a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of the defendant, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists. *State v. Gillard*, 64 Ohio St.3d 304, 311, 595 N.E.2d 878 (1992). Where a trial court breaches its affirmative duty to inquire, prejudice is presumed. *Id*.

{¶ 23} Depew contends that the pending disciplinary action against Bruner and his alleged failure to disclose it to him created a conflict of interest. He also

contends that the municipal court judges who presided over this case knew or reasonably should have known of the pending proceedings against Bruner and, accordingly, had an affirmative duty to inquire whether there was a conflict of interest. He argues that his due process rights were violated because the judges made no such inquiry and asks this court to therefore overturn his convictions. Depew's arguments are without merit.[1]

{¶ 24} First, Depew has not demonstrated that Bruner was advocating for anyone's interest other than Depew's during the proceedings. Although Depew contends that the pending disciplinary proceedings "could not but affect" Bruner's legal judgment and professional advice, he points to nothing in the record that supports this assertion or indicates that Bruner was "so affected by his personal adversity that he was thereafter beset with conflicting interests prejudicial to the conduct of [Depew's] trial or that he was placed in an adversarial position relative to [Depew]." *United States v. Mouzin*, 785 F.2d 682, 699 (9th Cir.). In short, Depew simply asks this court to treat Bruner's alleged failure to disclose the pending disciplinary action as creating an actual conflict of interest adversely affecting his ability to represent Depew without offering any explanation or evidence as to why we should do so. Likewise, Depew fails to demonstrate how the two trial court

---

[1] As discussed below, Depew's arguments are without merit. But even if we were to find that Depew's due process rights had been violated because the trial court judges breached their affirmative duty to inquire whether there was a conflict of interest, the remedy would be to remand the matter to the trial court to conduct a hearing to determine whether an actual conflict of interest existed, not to overturn Depew's convictions. *See Gillard*, 64 Ohio St.3d at 312, 595 N.E.2d 878.

judges knew or should have known of the pending disciplinary action against Bruner and Bruner's alleged failure to disclose it.

{¶ 25} Because Depew has failed to demonstrate an actual or even possible conflict of interest with respect to Bruner's representation of him during the pending disciplinary proceedings, he must demonstrate both prongs of the *Strickland* test to prevail on his ineffective assistance of counsel claim. He has demonstrated neither.

{¶ 26} Bruner was not under suspension at any point during the disciplinary proceedings against him. Therefore, he was licensed to practice law and authorized by virtue of his law license to represent Depew. He lost that right on November 17, 2021, and within two days notified the court of his suspension and resulting inability to represent Depew. Although there was a bond revocation hearing in three days, Depew retained a new attorney of his own choosing, Rutsky, who appeared at the hearing. Rutsky was able to obtain a continuance of the hearing on Depew's behalf because Depew was in the hospital and unable to appear.

{¶ 27} By the time of the rescheduled bond revocation hearing date, Rutsky had successfully negotiated a deal that allowed Depew to remain out on bond. Then, with a March 30, 2022 trial date, Rutsky had three and one-half months, which was more than enough time, to prepare for trial. Thus, Depew has failed to demonstrate that the pending disciplinary action against Bruner and resulting suspension prejudiced his defense in any way.

{¶ 28} Although Depew cites Bruner's failure to appear at the CPO hearing as evidence of deficient performance, under R.C. 2903.213(D), the court may issue

a CPO ex parte if it schedules a hearing in which the CPO can be modified. Thus, there is no requirement for counsel to be present at the initial hearing. The docket in Case No. 01416 reflects that a video arraignment was scheduled for September 23, 2021, and makes no mention of a CPO hearing. Nevertheless, at the video arraignment, the assigned judge sua sponte heard the CPO request, which R.C. 2903.213 entitles him to do.

{¶ 29} Bruner, who was under the impression that the September 23 hearing was merely a video arraignment, as the docket states, did not appear. Nonetheless, the docket reflects that he filed his notice of appearance on September 23, after the court had entered notice of the CPO on the docket, and that same day, requested a status hearing so he could seek modification of the CPO. The next day, September 24, 2021, the court granted Bruner's request for a status hearing, which the court scheduled for September 27, 2021. At the September 27 hearing, Bruner successfully obtained a modification of the CPO order that allowed Depew to return home provided that he remained alcohol free for the next two weeks. Accordingly, we find nothing demonstrating that Bruner's absence from the initial CPO hearing was deficient or that his absence prejudiced Depew in any way.

{¶ 30} Depew next contends that Bruner's performance was deficient because he "participated in decisions to enter a not guilty plea and ask for a trial." (Appellant's brief, p. 12). Depew does not explain how Bruner's participation in the entry of a not guilty plea was ineffective, and we find nothing indicating that Bruner's recommendation that Depew plead not guilty at his initial arraignment

constituted deficient performance or was in any way prejudicial to Depew. The alternative would have been to plead guilty or no contest, pleas that undoubtedly would have resulted in conviction, the very outcome about which Depew now complains.

{¶ 31} Depew next contends that he "justifiably relied upon [Bruner's] advice which led to additional errors that tainted the trial process going forward." (Appellant's brief, p. 13). But he does not explain what advice he relied upon (other than pleading not guilty), nor how such advice allegedly tainted the trial process.

{¶ 32} In the absence of any evidence of Bruner's deficient performance and prejudice to Depew, Depew has failed to meet his burden under the *Strickland* test of establishing a constitutional violation due to ineffective assistance of counsel. The first assignment of error is therefore overruled.

## B. Ineffective Assistance of Counsel, Part Two

{¶ 33} R.C. 2701.031 governs disqualification of municipal court judges and provides that a party may file an affidavit of disqualification with the clerk of the supreme court "[i]f a judge of a municipal or county court allegedly is interested in a proceeding pending before the judge, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the judge or to a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the judge."

{¶ 34} In his second assignment of error, Depew contends that attorney Rutsky was constitutionally ineffective for not filing an affidavit of disqualification

after the trial judge informed the parties at the beginning of trial in Case No. 01416 that he knew one of the alleged victim's uncles and that Depew's wife knew the judge's second cousin. Depew's argument is without merit.

{¶ 35} Judicial scrutiny of a lawyer's performance must be highly deferential. *State v. Weems*, 8th Dist. Cuyahoga No. 98397, 2013-Ohio-1343, ¶ 16, citing *State v. Sallie*, 81 Ohio St.3d 673, 674, 693 N.E.2d 267 (1998). A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that under the circumstances, counsel's action might be considered sound trial strategy. *Strickland*, 466 U.S at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *State v. Hoskins*, 2d Dist. Greene No. 2013 CA 78, 2014-Ohio-3639, ¶ 16, citing *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992).

{¶ 36} On this record, we find nothing suggesting that Depew's counsel acted deficiently by not filing an affidavit of disqualification under R.C. 2701.031. Defense counsel heard the trial judge's description of his acquaintance with the uncle of one of the alleged victims and that of Depew's wife with the judge's second cousin. Counsel also heard the trial judge explicitly state that those contacts would not affect his decision "one way or the other." (Tr. 8.) Under such circumstances, defense counsel may have reasonably determined that obtaining disqualification of the trial

judge under R.C. 2701.031 was highly unlikely. If counsel could reasonably conclude that obtaining disqualification was unlikely, his performance cannot be deemed deficient. *State v. Aldrich*, 11th Dist. Ashtabula No. 2017-A-0033, 2017-Ohio-8944, ¶ 18, citing *State v. Hall*, 2d Dist. Montgomery No. 25858, 2014-Ohio-416, ¶ 8; *see also State v. Grant*, 8th Dist. Cuyahoga No. 94101, 2010-Ohio-5241, ¶ 112 (trial counsel's decision to not file an affidavit of disqualification deemed a trial tactic that the court would not second-guess). Accordingly, under these circumstances, Rutsky's failure to file an affidavit of disqualification falls within the wide range of reasonable professional assistance.

{¶ 37} Moreover, Depew does not argue — and nothing in the record suggests — that the outcome of the trial would have been different if the trial judge had been disqualified and another judge had presided over the trial on the aggravated menacing charges. The evidence was overwhelming that Depew knowingly caused his neighbors to believe that he would cause them serious physical harm, the elements of an aggravated menacing offense in violation of R.C. 2903.21(A).

{¶ 38} Depew having failed to demonstrate that attorney Rutsky provided ineffective assistance of counsel, the second assignment of error is overruled.

### C. No Contest Plea to Disorderly Conduct Charge

{¶ 39} As set forth above, Depew pleaded no contest to the disorderly conduct charge in Case No. 01414 and stipulated to a finding of guilt. Trial proceeded on the two aggravated menacing charges in Case No. 01416 and Depew

was found guilty of both. As set forth on the respective dockets, the trial court entered separate judgment entries of conviction and sentence for each case.

{¶ 40} In his third assignment of error, Depew contends that the trial judge violated Crim.R. 11(B)(2), which states, "The plea of no contest is not an admission of the defendant's guilt but an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding."

{¶ 41} We find no violation. In its judgment entry in Case No. 01414, the trial court stated that Depew had pleaded no contest to the disorderly conduct charge and that upon the plea, the trial court had found him guilty. That is exactly what happened. Any argument that a no contest plea precludes a finding of guilt is wholly without merit. *See* R.C. 2937.07.

{¶ 42} We also find no indication in the record that the trial court considered the guilty verdict in Case No. 01414 in rendering its verdict after a bench trial on the aggravated menacing charges in Case No. 01416. Accordingly, the trial court did not violate Crim.R. 11(B)(2). The third assignment of error is overruled.

{¶ 43} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Bedford Municipal Court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

ANITA LASTER MAYS, A.J., and
SEAN C. GALLAGHER, J., CONCUR